**UNITED STATES of America**

v.

**Michele Louise COOKE, et al.**

**Crim. No. Y–86–0536.**

United States District Court,
D. Maryland.

Jan. 14, 1987.

Breckinridge L. Willcox, U.S. Atty., for the State of Maryland, Baltimore, Md., and Michael G. Middleton, Asst. U.S. Atty., Baltimore, Md., counsel for plaintiff.

Joshua Treem, Baltimore, Md., counsel for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Defendant Michele Louise Cooke has moved to dismiss her indictment, and in the alternative to suppress statements, alleging that she was granted immunity from prosecution in connection with the May 21, 1986 robbery of the bank where she worked in Waldorf, Maryland. The United States denies that any federal official granted Cooke immunity and contends that after interviewing Cooke's "accomplices" in the robbery of the bank, government investigators determined that Cooke had not been completely truthful in her statement and had not admitted the full extent of her involvement in the crime. Therefore, she was indicted.

## FACTS

After the bank robbery on May 21, Cooke spoke with Trooper Van Der Hayden of the Maryland State Police and gave a statement that included an account of the sequence of events and a description of the robber and getaway car. On May 22–23, she met again with Van Der Hayden and Special Agent George Cronin of the Federal Bureau of Investigation. She then gave a more extensive statement that disclosed her suspicion that the robbery had been committed by Kenneth Kohler, a bank customer with whom she had become friendly and whom she had dated several times. At the hearing on her motion, Cooke said she had not told investigators about Kohler previously because she was scared.

Cooke told the officers that Kohler had "joked" repeatedly about robbing the bank. A friend of Kohler's, Joey Matheson, was present during these conversations. A few days before the robbery, Cooke said, Kohler had told her that he would rob the bank soon and gave details about how he planned to carry out the robbery. During the actual robbery, she recognized Kohler's voice and identified Matheson's car as the one the robber used.

In her statement, Cooke said Kohler had called her early on the morning of May 22, the day following the robbery. He asked her to come by Matheson's apartment before work that morning. During the telephone conversation and during a subsequent conversation at Matheson's apartment, Cooke said, Kohler questioned her about the ongoing investigation of the robbery, asked about polygraph tests, warned her not to "tell on him" and threatened to have Matheson kill her if she did. *See* Federal Bureau of Investigation Form FD–302, Defendant's Hearing Exhibit 2.

At the hearing on her motion to dismiss, Cooke testified that she had signed a waiver of rights form provided by SA Cronin. She testified that the agent indicated to her that signing the waiver form was "procedure" and did not mean she was being arrested. Cronin and Van Der Hayden advised her to tell the truth, she said, and suggested that it would be better if she told them the full extent of her involvement in the robbery. She agreed to take a

polygraph test, and afterward was told by the investigators that she had been cooperative and would not be prosecuted.

After the questioning was completed, investigators accompanied Cooke on her way home. In the days immediately following the robbery, Cronin spoke to Cooke's parents on at least two occasions to inform them of the progress of the investigation and of the arrests of Kohler and Matheson. On May 27, Trooper Van Der Hayden called Cooke's father and asked him to bring Cooke to the state police barracks to make a written statement. It was undisputed at the hearing that at that time Van Der Hayden made a promise of "immunity" during this conversation. SA Cronin testified that Van Der Hayden had told him he had said Cooke would not be prosecuted on state charges because the FBI was handling the investigation. Based on this conversation with Van Der Hayden, Cooke's father advised Cooke to make the statement. She gave Van Der Hayden an eight page statement which essentially repeated the statement summarized in the FBI FD–302 form.

DISCUSSION

■ Ordinarily, the decision to confer witness immunity is made by the federal prosecutor and is reflected in a grant of statutory immunity under 18 U.S.C. § 6001–6005. However, courts had developed the concept of equitable immunity so that they may enforce informal or procedurally flawed grants of immunity on equitable grounds. *See, e.g., Rowe v. Griffin,* 676 F.2d 524 (11th Cr. 1982); *United States v. Carpenter,* 611 F.Supp. 768 (N.D. Ga.1985). In determining whether to enforce equitable immunity, a court must first determine the type of immunity granted and then decide whether the agreement should be enforced. In this case, the court must also consider whether a promise of immunity made by a state trooper should be enforced despite objections by federal prosecutors.

■ Cooke asserts that she was given immunity from prosecution in return for her cooperation with the FBI and State Police. Ambiguity in the terms of such a promise should be resolved in favor of the criminal defendant. *Rowe,* 676 F.2d at 526 n. 4; *Carpenter,* 611 F.Supp. at 776. Such a resolution is particularly appropriate in this case in which a scared, young person and her distraught parents were attempting to assist law enforcement authorities while arrest threatened on one side and death threatened on the other. In this case, it is apparent that Cooke thought, and Van Der Hayden probably meant, that "immunity" meant immunity from prosecution for the bank robbery. Given the unusual circumstances of the robbery, Cooke's professed fear of Kohler and Matheson, and her apparent complete cooperation, investigators would readily offer Cooke assurances that she could assist them without fear of later prosecution. Indeed, Cooke's statement lead directly to the arrests and pleas of Kohler and Matheson, and the government indicated that she would be its chief witness in Rule 11 proceedings at their rearraignment.

In determining whether such an informal grant of immunity should be enforced, the Eleventh Circuit has developed a three-part inquiry that is useful here:

[A]s a matter of fair conduct, the government ought to be required to honor such an agreement when it appears from the record that: (1) an agreement was made; (2) the defendant has performed on his side; and (3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to agreement, either assisted with the investigation or testified for the government.

676 F.2d at 528.

Here, it is apparent that a promise of immunity from prosecution was made. Under these admittedly unusual circumstances, it does not matter that the promise came from Trooper Van Der Hayden rather than SA Cronin. The investigation was being conducted jointly, and Cooke had no reason to suspect—absent a specific explanation from Van Der Hayden—that "immunity" was anything less than full immunity from prosecution. Again, ambiguity in a

promise of immunity must be resolved in favor of the criminal defendant, especially where the defendant is unsophisticated and unrepresented by counsel. In these circumstances, prosecutors and investigators should be particulary careful to explain precisely the terms of immunity and to monitor closely all agencies involved in the joint investigation.

It is also apparent that Cooke's prosecution is directly related to the offense in which she assisted investigators and promised to testify. Thus, the first and third inquiries under *Rowe* are readily answered. The second presents a more difficult question.

The government represented at the hearing that its prosecution was not based on any statements Cooke made to investigators in May. Rather, the government said its decision to prosecute was based on information obtained from Kohler and Matheson after they made plea agreements. Apparently, Kohler and Matheson persuaded the government that Cooke had not been truthful in her interviews with SA Cronin and Trooper Van Der Hayden and that her role in the robbery had been much more significant than she had admitted. If so, Cooke has not performed her side of the agreement—which she testified was simply "to tell the truth"—and she has no immunity. Cooke's truthfulness, as well as that of Kohler and Matheson, can best be ascertained at trial. Accordingly, a ruling on her motion to dismiss will be deferred until all the evidence has been heard. It is appropriate to consider such a motion either before or during trial. *See United States v. Brimberry*, 744 F.2d 580, 586–87 (7th Cir.1984).

Because the immunity granted was immunity from prosecution rather than immunity from the use of compelled statements, and because Cooke's statements are not incriminating, they may be admissible at trial. Accordingly, her motion to suppress will be denied.