621 A.2d 620

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Bernard J. SCUILLI, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1992.

Filed Feb. 10, 1993.

454

Edward M. Clark, Asst. Dist. Atty., Pittsburgh, for Com., appellant.

Robert P. Vincler, Pittsburgh, for appellee.

Before ROWLEY, President Judge, and CAVANAUGH, CIRILLO, OLSZEWSKI, DEL SOLE, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

HUDOCK, Judge:

In this appeal by the Commonwealth, we must decide whether a non-prosecution agreement entered into between Appellee and a municipal police officer binds the District Attorney of Allegheny County by its terms when Appellee performs his part of the agreement. Finding, *under the specific facts of this case,* that the Commonwealth is so bound, we affirm the trial court's grant of Appellee's petition to dismiss the charges pending against him.

The facts and procedural history are easily summarized as follows: On or about September, 1987, Lieutenant Thomas Houser, a police officer employed by the Shaler Township Police Department, told Appellee that charges relating to the alleged sexual abuse of his then two-and-one-half-year-old daughter would be dropped if he successfully passed a polygraph test. Relying on this promise, Appellee, at his own expense and without the advice of counsel, arranged to take such a test. Appellee passed this test, as well as a second test in 1988. In accordance with the agreement, no charges were initiated against Appellee at that time.

Almost four years later, two different police officers from the Shaler Township Police filed a criminal complaint accusing Appellee of sexually abusing his daughter during the period of June to August, 1987. Following a preliminary hearing, Appellee was held for trial on charges of involuntary deviate sexual intercourse, incest, indecent assault, corruption of mi-

nors, and endangering the welfare of children.[1] After the district attorney elected to formally charge Appellee by information, present counsel for Appellee filed a petition to dismiss, based on the 1987 non-prosecution agreement. In the petition Appellee alleged that the entry of formal charges against him violated his constitutional rights, as well as public policy, and amounted to prosecutorial misconduct. On February 19, 1992, after hearing oral argument, the trial court filed an order granting the petition. A timely motion to reconsider filed by the Commonwealth was denied and this appeal followed.

On appeal, the Commonwealth claims that it cannot be bound by the agreement between Appellee and Lieutenant Houser because neither the district attorney, nor any authorized representative or agent of the prosecutor's office, was privy to the non-prosecution agreement. Thus, the Commonwealth argues that the agreement is without legal consequence. The Commonwealth also asserts that the unauthorized agreement is unenforceable as a matter of public policy; it argues that such unbridled discretion is beyond the scope of municipal police powers and is an unacceptable impediment to the district attorney's traditional prerogative to evaluate criminal complaints to determine whether a charge should be brought against a suspect. Finally, the Commonwealth asserts that a less drastic remedy is available to correct the reneging on the agreement; namely, the suppression of any inculpatory statements directly or indirectly derived from Appellee's polygraph test. The Commonwealth argues that this remedy would "protect the public interest in the fair and efficient administration of criminal justice within the jurisdiction of the District Attorney, and it would have the salutary effect of restoring [A]ppellee to the *status quo ante.*" Commonwealth's Brief at p. 6.

Appellee responds to these claims by stating that, although these facts present an issue of first impression in Pennsylvania, courts of other states have upheld similar non-prosecution agreements between a criminal defendant and a prosecutor or

1. 18 Pa.C.S. § 3123(5), § 4302, 3126(6), § 6301 and § 4304, respectively.

a police department because it is a pledge of public faith which both fundamental fairness and detrimental reliance require that the agreements bind the prosecution. The trial court agreed with Appellee, stating: "This Court finds that fundamental fairness and public confidence in government officials and their agents require that the prosecution be held to the terms of any promises which were made to obtain performance on the part of [Appellee]." Trial Court Opinion at p. 1.

■■ Before discussing the merits, if any, of the Commonwealth's claims, we must first remember the narrow issue presented and the pertinent standard of review. At issue is whether the trial court properly dismissed the charges brought against Appellee. "The decision to grant or deny a motion to quash is within the sound discretion of the trial judge and will be reversed on appeal only where there has been a clear abuse of discretion." *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 439, 422 A.2d 1369, 1373 (1980). An abuse of discretion has been defined as

> not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Kocher*, 529 Pa. 303, 306, 602 A.2d 1308, 1310 (1992), (quoting *Commonwealth v. Moyer*, 497 Pa. 643, 647, 444 A.2d 101, 103 (1982)). Moreover, as an appellate court, we are bound by the trial court's findings of fact, if supported by the record. *Commonwealth v. Iannaccio*, 505 Pa. 414, 480 A.2d 966 (1984). With these standards in mind, we must determine whether the trial court abused its discretion in dismissing the charges brought against Appellee on the basis of the 1987 agreement not to press charges.

Our research discloses no Pennsylvania appellate decisions that are controlling, given the present factual scenario. In *Commonwealth v. Ginn*, 402 Pa.Super. 405, 587 A.2d 314 (1991), the Ginns were originally charged with various crimes involving an alleged loss of funds by Mrs. Ginn's employer. Due to the complexities of the prosecutions, the parties ap-

peared before the trial court and entered into an agreement, with court approval, that a mutually acceptable accountant would audit the employer's books to determine whether the Ginns diverted funds. The agreement further provided that if a diversion of funds was found to have occurred, the Ginns would plead guilty to the charges; if no diversion was found, the Commonwealth agreed to *nol pros* the charges against the Ginns.

An audit was performed in accordance with the agreement. Upon receipt of a final report finding no theft or improper use of computers, the Commonwealth sought to challenge the report by claiming an improper audit was performed and that the auditor failed to review all the necessary documents. In response, the Ginns filed a motion to dismiss the prosecution and to enforce the agreement. The trial court scheduled a hearing on the matter, but refused to hear any testimony from the Commonwealth regarding the preparation of the report because the agreement did not provide for judicial determination of the audit and the Commonwealth had a "moral obligation here to live up to the agreement." *Id.* at 408, 587 A.2d at 315 (quoting N.T. 1/23/90 at pp. 29–30). Thus, in accordance with the agreement and the auditor's findings, the trial court dismissed the charges against the Ginns with prejudice.

On appeal to this Court, the Commonwealth sought a reversal of the trial court's dismissal, again claiming that the audit was incomplete and improperly prepared and that the trial court erred in refusing the Commonwealth's request to present evidence to support these claims. Declining to review the specific allegations made by the Commonwealth regarding the preparation of the report, the panel affirmed the trial court's dismissal of the prosecutions. In support of this decision, the panel found that the Commonwealth had a duty to abide by the terms of the agreement it made with the Ginns. Because the agreement did not allow for the subsequent challenge of the auditor's findings in court, the auditor's final report was controlling. Recognizing that the Ginns took a risk in agreeing to plead guilty should the auditor find that funds were diverted, and the agreement would be enforced by the courts

under that scenario, the panel likewise held that the courts must hold the Commonwealth to the terms of the agreement and thus affirmed the dismissal of the charges. The panel further stated:

We find analogous the cases in this Commonwealth where a prosecutor and a defendant enter a plea agreement. In speaking on such a situation our Supreme Court has stated that there is an affirmative duty on the part of the prosecutor to honor any and all the promises made to a defendant in exchange for the defendant's plea. *Commonwealth v. Zuber*, 466 Pa. 453, 353 A.2d 441 (1976).

Our courts have demanded strict compliance with that duty in order to avoid any possible perversion of the plea bargaining system, evidencing the concern that a defendant might be coerced into a bargain or fraudulently induced to give up the very valued constitutional guarantees attendant the right to trial by jury.

*Id.* at 458–459, 353 A.2d at 444.

Similar concerns over the public faith placed on such a pledge have been expressed by courts which have considered the enforceability of agreements to drop a prosecution based upon the results of a polygraph test. *See* Annot., 36 A.L.R.3d 1280 (1971) (for a collection of cases).

*Id.* at 410, 587 A.2d at 316.

The cases discussed in the above-referenced annotation refer to instances where the state prosecutor enters into an agreement with the defendant that, if he passes a polygraph test, the charges filed against him would be dropped. The prosecutor then attempted to renege on the promise. In each instance, the court upheld the enforceability of the agreement. *See generally, State v. Davis,* 188 So.2d 24 (Fla.App.1966), *cert. den.,* 194 So.2d 621; *Butler v. State,* 228 So.2d 421 (Fla.App.1969). More recent cases decided in other sister jurisdictions have also held that the prosecutor is bound by the terms of an agreement not to prosecute if the defendant passes a polygraph test. *See generally, People v. Reagan,* 395 Mich. 306, 235 N.W.2d 581 (1975); *People v. Starks,* 146 Ill.App.3d 843, 100 Ill.Dec. 307, 497 N.E.2d 187 (2d Dist.1986).

■ These cases differ from the present case in several respects; in some of the cases the non-prosecution agreement, conditioned on the passing of a polygraph test, was approved by the court, and, in all of the cases noted above, the agreement was entered into between the defendant and the prosecution rather than a municipal police officer investigating the charges as in the present case. However, because we find the principles of fairness espoused in the above cases to be equally applicable to promises made by the police conducting the investigation, we find that the Commonwealth is bound by the agreement under the facts of this case. Moreover, courts in several states have upheld promises made to defendants by police officers investigating the crime, without the participation of the prosecutors. These decisions, while not always dealing with the taking of a polygraph test as a condition of the agreement not to prosecute, hold that the agreements are binding and preclude prosecution of the defendants.

In *People v. Fisher*, 657 P.2d 922 (Colo.1983), the defendant was asked by police officers to permit them to videotape him while he discussed how he committed burglaries and disposed of the stolen property. The police promised the defendant that the videotape was to be used as an instruction device for police cadets and that the videotape would not be used against him in a criminal proceeding. Subsequently, the defendant was arrested and charged with burglary. The prosecution attempted to use the videotape as evidence. The court held that the police officer's promise would be upheld because the videotape implicated the defendant's privilege against self-incrimination and constitutional right to counsel, and because the defendant reasonably and detrimentally relied upon the officer's promise by fully performing his part of the bargain. The court also cited principles of fundamental fairness in upholding the promise.[2] *See also People v. Manning*, 672

2. The court granted the relief requested by the defendant, namely, the suppression of the videotape. In *Commonwealth v. Peters*, 473 Pa. 72, 373 A.2d 1055 (1977), our Supreme Court suppressed as involuntary statements made by a defendant because a county detective promised him that the most that would happen to him was that he would be held as a material witness or released on nominal bail. The defendant was

P.2d 499, 506 (1983) (the Supreme Court of Colorado upheld a promise between the defendant and a police officer that, if she disclosed information about her missing son, she would not be prosecuted, finding that the police officer was acting with the apparent authority of the government and that "if police officers were free to make promises to actual or potential defendants, knowing that the government could, without consequence deny or disaffirm those commitments, the temptation would be great to use unauthorized promises as a device for extracting confessions").

Federal courts have also upheld agreements between investigating authorities and a defendant, and have further held that the prosecution is bound by the agreement. In *U.S. v. Carrillo*, 709 F.2d 35 (9th Cir.1983), agents of the Drug Enforcement Agency offered not to prosecute the defendant for a drug offense if he cooperated with the government's investigation of certain suspected drug traffickers. The defendant agreed and cooperated, but stated that he would not testify in court. After refusing to testify when asked to do so, the defendant was held in contempt and indicted for possession of drugs on the ground that he breached his cooperation agreement. The court found that the indictment violated the government's promise not to prosecute the defendant as he had performed his obligations under the agreement and that an obligation to testify was not part of the agreement. The court further stated that "[u]nder settled notions of fundamental fairness the government was bound to uphold its end of the bargain." *Id.*, 709 F.2d at 37.

Particularly persuasive is the district court's holding in *U.S. v. Cooke*, 650 F.Supp. 991 (D.Md.1987), in which an officer of the Maryland State Police and a special agent of the FBI told the defendant that she would not be prosecuted and would enjoy immunity if she gave them information regarding a bank robbery. The defendant complied but was subsequently in-

subsequently charged, tried, and convicted. While we note that the high court found that the prosecution was bound by the promise of the county detective, because he had the apparent authority to enter into such an agreement, we do not believe, as shall be discussed more fully *infra*, that suppression is the appropriate remedy in the present case.

dicted for robbery. At a hearing on defendant's motion to dismiss the indictment, the special agent of the FBI testified that the defendant signed a waiver of rights form and was advised that her signing the form was "procedure" and did not mean that she was being arrested. The defendant agreed to take a polygraph test and afterward was told by the investigators that she had been cooperative and would not be prosecuted. Subsequently, the defendant came to the police station and gave a written statement after she was promised immunity from prosecution by the state trooper.

█ The district court began its discussion by noting that courts have developed the concept of equitable immunity through which they may enforce informal or procedurally flawed grants of immunity on equitable grounds. *See, e.g., Rowe v. Griffin*, 676 F.2d 524 (11th Cir.1982); *United States v. Carpenter*, 611 F.Supp. 768 (N.D.Ga.1985). In determining whether such an informal agreement not to prosecute should be enforced, the court referred to a three-part inquiry developed in *Rowe:*

> [A]s a matter of fair conduct, the government ought to be required to honor such an agreement where it appears from the record that: (1) an agreement was made; (2) the defendant has performed on his side; and (3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to agreement, either assisted with the investigation or testified for the government.

*Rowe v. Griffin*, 676 F.2d at 527–28.

The Maryland District Court in *Cooke* had no problem readily recognizing that the promise not to prosecute was made. The court further found that it did not matter that the promise came from a state trooper rather than a federal agent; a joint investigation was conducted, and the defendant had no reason to suspect, absent a complete explanation from the state trooper, that the immunity offered was not full immunity from prosecution. (The state trooper had informed the FBI agent that he told the defendant he would not bring state charges because the FBI was handling the matter.) The *Cooke* court also found that the defendant's prosecution was

directly related to the offense in which she assisted the investigation. The more difficult question district court confronted was whether the defendant performed her side of the bargain. The Commonwealth argued that defendant's prosecution was not based on any statements made in cooperation with the investigation but was based on subsequent statements made by the arrested perpetrators of the crime that the defendant was not being truthful and was much more involved in the robbery. Thus, the district court found that the defendant's truthfulness could best be ascertained at trial and, accordingly, deferred decision on the motion to dismiss until after all the evidence had been heard.

We find the three-part inquiry of equitable immunity to be well-reasoned and hereby adopt the same test and apply it in the present case. In the case *sub judice*, there can be no question that the agreement was entered into between the Shaler police officer and Appellee. A stipulation to this fact was entered into between Appellee and an assistant district attorney and was presented to the trial court. It is also clear that Appellee fully performed his side of the bargain. Without advice of counsel and at his own expense, Appellee hired a polygraph examiner and passed the test. A year later Appellee again took such a test and passed. It is equally clear that the Shaler police officer did not press charges in 1987. Finally, it is also beyond question that the subsequent charges filed against Appellee arose from the very same conduct about which he was questioned in polygraph tests and that there was no new evidence to support the charges. Under these circumstances, it is a matter of "fundamental fairness" that the Commonwealth be bound by the agreement entered into between the police officer and Appellee.

Throughout its appeal, the Commonwealth claims it cannot be held to the agreement because it was not a party or privy to the agreement, that the police officer had no authority to enter into the agreement, and, therefore, that it the agreement is of no legal consequence. As seen in the cases discussed above, the courts of other states, in reaching their decisions, did not explore the authority of the government

agent making the non-prosecution agreement but instead accepted the apparent authority of the law enforcement agents to bind those involved in a subsequent prosecution. As stated in *People v. Fisher, supra:*

"[i]t is not constitutionally significant, in our view, that the request for videotaping and the promise of non-use originated with Detective Cain rather than the prosecutor. Detective Cain was no less an agent of the government than the prosecutor and was at least equally as capable of implicating the defendant's constitutional rights by his request.... The People argue that the defendant has no due process right to enforcement because Detective Cain lacked authority to bind Colorado officials. The appropriate consideration, as we see it, is not the power of an Oklahoma City police officer to bind another state, but, rather, the scope of defendant's due process right to enforce a governmental promise not to use evidence against him, upon which he detrimentally relied in furnishing incriminating information to the police.[12]

---

[12] The problem created by this case is easily avoided by responsible governmental officials instructing and requiring law enforcement officers to refrain from making promises beyond their ability to perform. This is a relatively simple solution within the power of the state whereas, in contrast, a criminally accused cannot realistically be expected to know or discover the extent of a law enforcement officer's authority in the matter of criminal prosecutions."

*Id.* 657 P.2d at 929, n. 11, 930. *See also* Restatement (Second) of Agency § 8. More significant in these cases is the fact that the defendant fully performed his or her end of the bargain and that equity required the prosecution to uphold its end of the agreement.

■ The Commonwealth also argues that a less drastic remedy of suppression is available in the present case. However, we note that there is nothing to suppress in the present case; there is nothing of record that indicates what statements were made by Appellee during the polygraph examinations.

Finally, the Commonwealth argues several public policy reasons in support of its claim that agreements entered into

between municipal police officers and actual or potential defendants should not be binding on the Commonwealth. The Commonwealth argues that such unbridled discretion is beyond the scope of municipal police powers and is an unacceptable impediment to the district attorney's traditional prerogative to evaluate criminal complaints to determine whether charges should be brought against a suspect. The answer to this concern is that a strict rule regarding non-prosecution agreements cannot be established; it would be foolish indeed for this Court to hold either that all agreements made by police officers during their investigations are binding on the prosecution or, to the contrary, that no agreement made by the police is binding. Instead, the agreement must be judged on a case-by-case basis and must involve the discretion of the trial court which hears the evidence. The three-part inquiry established in *Rowe, supra,* and followed in *Cooke, supra,* provides some standards to guide the trial court in its determination and upon which to base appellate review. Moreover, the trial court can look to such factors as whether the defendant waived his constitutional rights against self-incrimination and to counsel, and whether the agreement was entered into before charges were filed or whether the agreement arises after a criminal information was filed. If the agreement with the police occurs after an information is filed, great deference should be paid to the district attorney since the prosecution is now under his control.

In the present case, the record shows that Lieutenant Houser was the sole law enforcement authority involved in investigating the 1987 allegations of child sexual abuse brought against Appellee. The parties reached an agreement that no charges would be brought if Appellee passed a polygraph test. Without advice of counsel, Appellee, noting the seriousness of the charges against him, arranged to take such a test and passed it not once but on two occasions. Lieutenant Houser kept his part of the bargain by not pressing charges. Four years later, different Shaler police officers, *with no new evidence of abuse,* filed charges stemming from the 1987 allegations. There is no evidence of record that

Appellee knowingly waived his constitutional rights prior to taking the polygraph tests. Under these circumstances, we find that the trial court did not abuse its discretion in finding that fundamental fairness and confidence in government officials require that the District Attorney be bound by the agreement. Thus, we affirm the grant by the trial court of Appellee's motion to dismiss.

Order affirmed.

CAVANAUGH, J. files a dissenting Opinion joined by ROWLEY, President Judge, and OLSZEWSKI and POPOVICH, JJ.

OLSZEWSKI, J. files a dissenting Statement joined by ROWLEY, President Judge.

DEL SOLE, J., joins and files a concurring Statement.

FORD ELLIOTT, J., joins and files a concurring Statement.

Dissenting Opinion by CAVANAUGH, Judge:

I respectfully disagree with the decision of the majority that a district attorney, as an elected official in a county, is bound by the representations made by any police officer also working within that county to a criminal suspect that prosecution will not occur for a particular offense if the suspect complies with conditions set out by the police officer. This usurpation of the statutory authority of the district attorney should not be condoned by this court.

It is important to note what issues are not presented by this case. This case is not about 1) a prosecutor's non-observance of a duly negotiated plea agreement with a criminal defendant; or 2) the suppression of evidence seized by police in violation of a criminal suspect's constitutional rights, or 3) *detrimental* reliance by a criminal suspect upon misrepresentations made by a police officer. Rather this case involves an issue of arrogation by a township police officer of the exclusive authority conferred upon the county district attorney.

The defendant is this case had no plea agreement with the district attorney's office. He dealt with a township police officer and twice took a lie detector test upon the representation of the police officer that no prosecution would ensue should he pass the lie detector test. The majority concludes that "fundamental fairness" requires that any subsequent action against the defendant be dismissed. I disagree and would find that the defendant has not been prejudiced by the *ultra vires* representations made by the police officer.

As noted by Judges Olszewski and Popovich in their dissenting opinions in *Commonwealth v. Stipetich*, 423 Pa.Super. 427, 621 A.2d 606 (1993) the district attorney is entrusted with conducting the criminal litigation of the county on behalf of the electorate. *See, Commonwealth v. Stipetich, supra,* dissenting opinion by Olszewski, J. at ——, 621 A.2d at 613; 16 P.S. § 4402(a). I adopt the cogent reasoning of Judge Popovich's dissent, as well, particularly his reliance upon the instructive case of *People v. Gallego*, 430 Mich. 443, 424 N.W.2d 470 (1988). The authority to charge persons with violations of the criminal law resides solely with the district attorney. This power is conferred by statute and may not be impugned by either the judiciary or other arms of law enforcement machinery. As made clear by the supreme court in *Commonwealth v. Schab*, 477 Pa. 55, 383 A.2d 819 (1978) (recognizing the broad and exclusive power in the office of elective district attorneys when created in 1850), not even the Attorney General has a common law or statutory right to supercede the charging authority of the district attorney without the explicit approval of the president judge of the county. *A fortiori*, an unelected, police officer has no authority to bind the district attorney to agreements which touch upon the charging function of that office. The majority's holding to the contrary creates the untenable situation described by Judge Popovich of endowing, "untold thousands of police throughout this Commonwealth with this sensitive, fundamental power." *See, Stipetich, supra,* dissenting opinion by Popovich, J. at ——, 621 A.2d at 615.

The majority in this case, and in *Stipetich,* engages in the enunciation of a new precept of Pennsylvania law, beyond our authority as an intermediate appellate court. *See, Commonwealth v. Smith,* 404 Pa.Super. 553, 559, 591 A.2d 730, 733 (1991) (citations omitted), reversed on other grounds, 532 Pa. 177, 615 A.2d 321 (1992). Our supreme court has given no indication that it would condone the encroachment upon the statutory authority conferred upon the office of the district attorney contemplated by the majority decision. Rather, as indicated by the holding in *Schab, supra,* the supreme court has closely limited the means by which the charging function of the district attorney may be compromised.

The appellee has suffered no actual prejudice by the Commonwealth's filing charges against him. The surprise he may have experienced at being charged some four years after-the-fact of the commission of the offenses does not constitute legal prejudice. He is not entitled to any "benefit of the bargain" because the consideration tendered by him was illusory and nonexistent. He agreed to take polygraph tests in return for no prosecution if he passed. *Ab initio,* a person has no right not to be charged with a criminal offense if there exists probable cause. The results of a polygraph test are not admissible for any purpose in a court of law, *see, Commonwealth v. Rodriguez,* 343 Pa.Super. 486, 495 A.2d 569 (1985), including the preliminary hearing stage at which the Commonwealth must make out a prima facie case. Therefore, the fact that the appellee took the polygraph tests is of no legal significance regarding the burden borne by the Commonwealth in establishing either a prima facie case or in proving guilt beyond a reasonable doubt. Here, appellee is currently in the same position vis a vis the retention of his rights in defending the charges had he never agreed to take the polygraph tests. He has relinquished no rights or protections which he would otherwise enjoy had he not taken the tests.

The fact that in these cases it appears to be unfair to a defendant that the courts would not enforce as binding on the Commonwealth an agreement with a law enforcement officer containing an unauthorized, indeed, illicit, "deal" should cause

us no pause in our adherence to fundamental principles of governmental authority. Depending upon the circumstances, our system of law might give relief to the unfairness in other forms such as suppression of evidence wrongfully collected, prosecutorial restraint, or accepted avenues of judicial nullification. *See, Commonwealth v. Powell,* 527 Pa. 288, 590 A.2d 1240 (1990) (A trial court may rectify errors "in the interest of justice" which would otherwise result in unfairness.) [1]

Because the majority decision is an incursion into the sole rule-making authority of the supreme court and is contrary to the statutory law of this Commonwealth, I dissent and would remand for trial.

ROWLEY, President Judge, and OLSZEWSKI and POPOVICH, JJ., join in this dissenting opinion.

Dissenting Statement by OLSZEWSKI, Judge:

The facts of this case present a substantially similar situation to that presented in *Commonwealth v. Stipetich,* 423 Pa.Super. 427, 621 A.2d 606 (1993). The issue is whether the police may enter into a non-prosecution agreement which is enforceable against the district attorney. It is our position that the General Assembly has provided absolute discretionary power to the district attorney in matters involving prosecution of citizens accused of criminal conduct in this Commonwealth. 16 Pa.S.A. § 1402(a); *Stipetich* at ——, 621 A.2d at 613 (Olszewski, J., dissenting). An investigating officer may not, consistent with the statute, enter into a non-prosecution agreement with a person facing potential prosecution. Insofar as Judge Cavanaugh's dissent stands for this proposition, I join him wholeheartedly.

1. In order to clear up any possible misunderstanding concerning the scope of judicial nullification, I do not interpret this concept to include authority of the trial court to enter an interlocutory order which results in usurpation of the prosecutorial function. Rather, by judicial nullification is meant accepted modes of the exercise of judicial discretion at the adjudicatory or dispositional phases, as was done in *Commonwealth v. Powell,* 527 Pa. 288, 590 A.2d 1240 (1990). Other examples of judicial nullification might be direction of a verdict, entry of a not guilty verdict in a nonjury case, arrest of judgment, or a finding of *de minimus* infraction.

I write separately to emphasize my position regarding the remedy a court should provide a defendant whose constitutional rights. In *Stipetich*, I proposed that the trial court may not dismiss charges against a defendant when the police enter into a non-prosecution agreement without the knowledge and consent of the district attorney. Rather, at 'the appropriate juncture, the defendant should file a motion to suppress any evidence procured in violation of his or her constitutional rights. This remedy will put the defendant in the same position that he would have been had no improper conduct occurred, while at the same time protect the district attorney's statutory powers. *Stipetich* at ——, 621 A.2d at 615.

Under the facts of this case, I agree that defendant might not be entitled to a remedy since the fruits of the improper conduct will be inadmissible at trial. Such a finding, however, should be more appropriately reserved for a hearing after defendant makes an appropriate motion to suppress. In short, I wish to emphasize that a decision to reverse the trial court's dismissal of the charges should be due to the improper abrogation of the district attorney's statutory duties by the police. Whether the evidence procured as a result of the improper conduct "prejudiced" defendant by violating his or her constitutional rights is a matter independent from the determination of whether the prosecutor should be entitled to pursue the case.

Judge Cavanaugh also writes that an appropriate remedy in a case such as this one might be "suppression of evidence wrongfully collected, prosecutorial restraint, or accepted avenues of judicial nullification." Dissenting opinion of Judge Cavanaugh, p. 469. In support of a remedy of "judicial nullification," the dissent cites *Commonwealth v. Powell*, 527 Pa. 288, 590 A.2d 1240 (1991), wherein our Supreme Court held that a trial judge may "in the interest of justice" rectify prejudicial trial court errors. Specifically, the Court in *Powell* upheld the trial court's *sua sponte* grant of a new trial to a defendant who was prejudiced by the trial court's denial of a motion for a continuance. *Id.* at 294, 590 A.2d at 1243. Trial

court remedies molded "in the interest of justice" are subject to review under an abuse of discretion standard. *Id.*

Unlike *Powell,* however, cases where a police officer enters into a non-prosecution agreement without consulting the district attorney do not involve trial court errors which the trial court may correct on its own motion. Rather, the harm done, usurpation of the district attorney's statutory duties, occurs well before any trial ever occurs. A judicial remedy which attempts to cure the harm by dismissing charges against a defendant does not remedy the harm at all—it exacerbates it. We have written:

> The function of the courts of any jurisdiction is to interpret an already existing legislative enactment, not engraft upon it any novel conditions or mandates when its clear language does not lend itself to any such requirement similar to that suggested by appellant here. To do so would be a judicial usurpation of a legislative prerogative.

*Commonwealth v. Knowles,* 373 Pa.Super. 203, 207, 540 A.2d 938, 940 (1988), *alloc. denied,* 520 Pa. 614, 554 A.2d 507 (1988).

In conclusion, I am compelled to express my opinion that a non-prosecution agreement reached without the knowledge and consent of the district attorney is void from the start. Judicial recognition, at any level, of a remedy which frustrates the powers of the district attorney is an abuse of discretion. The harm suffered by defendant may well be remedied, but not by a dismissal of charges.

Subject to the observations above, I join Judge Cavanaugh in dissent.

ROWLEY, President Judge, joins in this dissenting statement.

Concurring Statement by DEL SOLE, Judge:

I join the Opinion authored by Judge Hudock. I believe that the burden of controlling agreements between local police and suspects should rest with the local District Attorney's office, as expressed in my Concurring Statement in *Commonwealth v. Stipetich,* 423 Pa.Super. 427, 621 A.2d 606, (1993).

I further read Judge Cavanaugh's dissent in this matter as an endorsement of the Majority's disposition. Specifically, Judge Cavanaugh acknowledges that our system of law may relieve unfairness through "accepted avenues of judicial nullification." Dissenting Opinion at 469. I view the granting of a motion enforcing an agreement following a hearing before a trial judge under the standards we set forth today in these companion cases, as an accepted avenue of judicial nullification.

Concurring Statement by FORD ELLIOTT, Judge:

I join in the majority opinion's rationale and the result that dismissal of the charges in this case was a proper remedy. I do so because I believe implicit in the majority's analysis is the requirement that one who seeks to enforce a nonprosecution agreement must show some detrimental reliance which would rise to the level of prejudice or manifest unfairness. Instantly, the trial court found such unfairness and granted relief accordingly.