## Commonwealth v. McElroy

*Joseph A. Massa Jr., district attorney,* for Commonwealth.

*Leonard G. Ambrose,* for defendant.

WOLFE, *S.J.,* September 30, 1994—On August 8, 1994, the court granted defendant's motion to compel the enforcement of a plea agreement with the Com-

monwealth and granted defendant's motion for sanctions against the Commonwealth for the destruction of taped interviews. The Commonwealth has appealed the order, and we write in support of our reasons in granting the motions.

## ENFORCEMENT OF PLEA AGREEMENT

Defendant is charged that he did on February 3, 1993, commit the crimes of (1) recklessly endangering, (2) overtaking a vehicle on the left, (3) reckless driving, (4) driving while operating privileges were suspended or revoked, and by amendment to the complaint, (5) recklessly endangering.

The allegations of the motion to enforce the agreement and the Commonwealth's answers thereto leave no doubt the Commonwealth through the District Attorney, Mr. Massa, Esquire, agreed to a plea agreement from the defendant:

"(7) (Defendant's allegation) On May 9, 1994, after the matter had been recessed by the court because of the state police's refusal to comply with the discovery order in an area outside the courtroom and adjacent to the lawyer's room behind the main courtroom in the Warren County Court House, the district attorney approached counsel and his assistant, Attorney William Weichler, and made a plea offer to settle the case. The district attorney indicated to counsel unconditionally and unequivocally that if defendant would enter a no contest plea to Count 5 of the criminal information (reckless endangering), the Commonwealth would in exchange nolle prosse Counts 1 through 4 of the criminal information. The plea offer at no time was conditioned upon approval by the police and/or members of the decedent's family. At that the district attorney was informed by counsel that the plea offer would be com-

municated to the defendant and that counsel would discuss the merits with him."

The Commonwealth answers the foregoing allegations as follows:

"(7) The allegations of paragraph 7 are admitted in part and denied in part.

"(A) It is admitted that on May 9, 1994, an ongoing informal discussion occurred between District Attorney Joseph Massa Jr., Attorney Ambrose, and his assistant, William Weichler. The discussion commenced in the attorney's room when Barry Smith, Esq., the attorney representing the Rehe family (victims of Thornton/McElroy) queried as to whether any plea negotiations had commenced. Defense counsel stated none had started and offered the observation that this was a matter that had to go to trial.

"(B) After the chamber conference Attorney Ambrose was informed that the Commonwealth would place this matter on the June trial list. Attorney Ambrose stated that he would be unavailable during the June trial term because he was taking one of his children to soccer camp at Duke University.

"(C) District Attorney Massa and Attorney Ambrose again spoke with the court and, I believe, the court granted defendant's request that the matter be deferred until the August trial term.

"(D) Attorney Smith had expressed to the Commonwealth the victims' concerns regarding defendant's repeated continuances and emphasized that the civil defendants were using the pendency of the criminal actions to delay discovery and other pertinent matters on the civil actions. (See exhibit 'A.') The Commonwealth concurred and advised it would oppose any further continuances.

"(E) With that background (7a-d), it is admitted that District Attorney Massa did suggest that Attorney Ambrose approach the defendant regarding a no contest plea to Count 5 (reckless endangerment) in exchange for the dismissal of Counts 1-4. The Commonwealth believes the initial mention of a negotiated plea took place at the hallway to the rear of the attorney's room.

"(F) Later that morning, Attorney Ambrose and his assistant Weichler came to the third floor hallway near the district attorney's office, and a further informal conversation took place. It is the Commonwealth's recollection that Attorney Ambrose stated he would consider a plea but that he opined 'this was a case that had to go to trial.'

"(G) District Attorney Massa did not specifically mention that he would seek the approval of the police or members of the decedent's family, although that procedure is always this prosecutor's policy. No time limit was mentioned. No conditions were discussed.

"The ongoing discussion was congenial, respectful and informal. Nothing was reduced to writing."

(Defendant's allegation:)

"(8) On Monday, June 13, 1994, during a telephone conversation between counsel and District Attorney Massa concerning the tardiness of Attorney Shugars to produce the material he had agreed to produce pursuant to the clarified discovery order of April 21, 1994, District Attorney Massa indicated that the squabbling over discovery could be resolved if the plea offer as made was accepted by the defendant. At that time counsel informed the district attorney that he had met with the defendant and his family and that they were considering the merits of the plea offer. District Attorney Massa indicated that the plea offer was still open and available for the defendant to accept."

262

(Commonwealth's answer:)

"(8) District Attorney Massa made no contemporaneous written notes of a telephone conversation on June 13, 1994, with Attorney Ambrose and, thus, is in no position to dispute the allegations in paragraph 8. By way of further answer, District Attorney Massa recollects, and therefore avers, that he reiterated that the district attorney's office was not involved in the Pennsylvania State Police internal investigation of Thornton, had no access to any records thereof, and could only relay court orders to Attorney Shugars."

(Defendant's allegation:)

"(11) On July 7, 1994, counsel (Attorney Ambrose) immediately telephoned the district attorney and informed him that the defendant had accepted the plea offer as made on May 9, 1994. Counsel confirmed the telephone call with a letter dated July 7, 1994, wherein the defendant accepted the plea offer as previously made by the district attorney. A copy of the acceptance letter is hereto attached and marked as exhibit 'D.' "

(Commonwealth's answer:)

"(11) Admitted in part. By way of further answer, District Attorney Massa stated during the telephone conversation with Attorney Ambrose that he should put his position in writing. Attorney Ambrose's letter of July 7, 1994, was received by the Commonwealth.

"Upon receipt of said letter, District Attorney Massa advised Attorney Smith that the defendant was willing to plea no contest to *Count 5*. Attorney Smith requested an opportunity for he and his clients (Rehe family members) to meet with the district attorney and share their viewpoints on the plea negotiations. District Attorney

Massa agreed to such a meeting. The earliest mutually convenient time for a meeting was July 20, 1994."

The allegations and answers thereafter disclose the district attorney informed defendant's counsel, Mr. Ambrose, the decedent's family objected to the plea negotiations.

It is obvious the district attorney decided to renege on the plea negotiations that he entered into subsequent to the decedent's family having disagreement with the negotiations. In that regard James Rehe was killed when his vehicle was impacted by the vehicle of Pennsylvania State Trooper Kenneth Thornton who was in process of attempting to stop the truck driven by the defendant. Count 1 charging recklessly endangering specifically focuses on the death of Mr. Rehe, whereas Count 5, recklessly endangering, alleges the defendant operated his vehicle to a point where a vehicle driven by Kenneth Thornton became involved in a head-on collision with a southbound vehicle driven by James Rehe, charging defendant operated at an excessive rate of speed and did make several illegal passes, increasing his speed while being overtaken on the left by another vehicle, all in disregard for the safety of other persons then and there lawfully traveling on S.R. 62. The Rehe family's specific objection is that the plea negotiations are an outrage to the memory of James Rehe and permit the defendant to escape direct responsibility for his demise, for which the decedent's estate has commenced a civil action represented by Attorney Smith against the defendant, Kenneth Thornton and defendant's trucking company.

The answer of the Commonwealth does not either directly or inferentially state that the plea negotiations were conditioned upon any approval by the victim's family or under the Victim Witness Act or any other

condition whatsoever. The consummation of the plea negotiations is more readily recognized when it is considered, after the court informed the district attorney and defense counsel the agreement in fact existed, the defendant then appeared before the court to place on the record the plea negotiations and at that time for the court to accept or reject the plea negotiations; and, if accepted by the court, for imposition of sentence on Count 5. It was in midstream of outlining the plea negotiations to the court by defense counsel and the district attorney that Attorney Smith approached the bench and objected to the plea negotiations on behalf of the family because the family had been informed by the district attorney that no plea agreement was made and would not be made without the family's input. With this, the court deferred further action on the case, and subsequently the district attorney has appealed the court order that the plea negotiation had in fact been made.

## LAW

We agree with the defendant there exist no cases precisely on point, to-wit, if a plea offer made by the Commonwealth's attorney and accepted in writing by the defendant is enforceable prior to the acceptance of that agreement by the court and the defendant's entry of a plea.

Defendant cites *Commonwealth v. Ginn,* 402 Pa. Super. 405, 587 A.2d 314 (1991), as an analogous factual situation that should be applicable instantly as well as *Commonwealth v. Zuber,* 466 Pa. 453, 353 A.2d 441 (1976).

In *Commonwealth v. Scuilli,* 423 Pa. Super. 453, 457-459, 621 A.2d 620, 622 (1993), cited by the defendant wherein our Superior Court held that promises made

by police officers to defendants without prior confirmation from the district attorney are enforceable against the Commonwealth. Defense cites sister state decisions enforcing agreements entered into by the prosecutors who later attempt to renege. *State v. Davis,* 188 So.2d 24 (Fla. App. 1966); *Butler v. State,* 228 So.2d 421 (Fla. App. 1969); *Kissamore v. State,* 286 D.654, 409 A.2d 719 (Md. 1980).

The essence of the enforcement of the plea negotiations is either founded in contract law or, if that is not accepted, in a criminal case the prosecutor must be compelled to live up to his/her agreement. To permit the prosecutor to renege attacks and deteriorates the very integrity of the judicial system and credibility of the Commonwealth, which is intolerable. The judicial branch of democracy must not be brought to its knees because a prosecutor changes his mind or made a poor judgment initially or failed to make a proper investigation involving all of the parties to a criminal conduct. Knowledgeable people understand that the real enforcement of the law lies in respect for the law and not officers in uniform.

We conclude the facts of this case show unequivocally Mr. Massa extended an offer to Mr. Ambrose which was accepted unconditionally as a plea to Count 5 on the information in return for a nol pros of the other four counts. This does not mean to conclude the court is bound by the negotiations; however, it does conclude in our view the agreement is not against public policy per se, is not illegal; and the court has historically encouraged plea negotiations for the obvious reason of maintaining judicial justice and integrity as well as judicial time and proper punishment for crimes committed.

## IMPOSITION OF SANCTIONS

The factual background of this motion is found in the transcript of proceedings taken on August 8, 1994, of the testimony of Corporal Jack Patterson and Corporal (now Sergeant) James McFadden.

This is an interesting issue. The defendant was charged by Corporal Patterson on March 3, 1993, with the foregoing charges by reason of an accident and the ensuing death of James Rehe that occurred on February 3, 1993. This accident was occasioned, as alleged, by the pursuit of a Pennsylvania state trooper, Kenneth Thornton, in his attempt to stop the defendant's truck and the defendant attempting to flee, causing a head-on accident between the Thornton vehicle and the Rehe vehicle.

Because of the personnel involved in the accident being a Pennsylvania state trooper, an investigation was launched by the Bureau of Professional Responsibility and the Bureau of Internal Affairs of the Pennsylvania State Police as to the conduct of Trooper Thornton. To carry out this investigation, Corporal Patterson and Sergeant McFadden were dispatched from Harrisburg to Warren County where they interviewed eyewitnesses as to different aspects of the occurrence of the accident. The interview of these witnesses took place the day after, to-wit, February 4, 1993; and the witnesses were tape-recorded by Sergeant McFadden. Sergeant McFadden took the tapes with him to his Harrisburg office where, according to his testimony, he put the interviews, either verbatim or abbreviated, on his personal computer and thereafter erased the tapes on January 17, 1994. (T-25.)

Corporal Patterson completed his report of the interviews and submitted a copy to defense counsel, Mr.

Ambrose, Esquire, on the date of the defendant's preliminary hearing on September 16, 1993. (T-7.) On April 21, 1994, we entered an order directing the District Attorney of Warren County and the Pennsylvania State Police to disclose and make available all evidence it gathered from witnesses through the efforts of Corporal Patterson and Corporal McFadden of the Pennsylvania State Police subsequent to the accident date of February 3, 1993. Colonel Glenn A. Walp, through his counsel, Attorney Shugars, filed preliminary objections, and without personally appearing for argument we resolved the objections and entered a final order on May 20, 1994, denying Colonel Glenn A. Walp's objections that we lack jurisdiction to entertain the defendant's motion for production and ordered the Pennsylvania State Police to comply with the order of April 21, 1994, within 30 days from May 20, 1994. It was thereafter discovered that the tapes were erased when defendant made the motion for sanctions.[1] It is noted we took strong exceptions to Colonel Walp's frivolous position the court lacked jurisdiction over the subject matter in that the Commonwealth, after its interviews, commenced the criminal proceedings against Thornton and McElroy.

According to Sergeant McFadden's testimony, after the Commonwealth decided to cooperate with the court order, Attorney Shugars prepared a declaration of Sergeant McFadden's interview, mailed it or faxed it to Sergeant McFadden who signed it and returned it to Attorney Shugars. According to the testimony of Sergeant McFadden, he destroyed the tapes in the month

---

1. We attach hereto and make a part hereof our order of May 20, 1994 and opinion thereon.

of March 1993, and not January 17, 1994, as Attorney Shugars put in the declaration.[2]

We entered an order as sanctions that those witnesses personally interviewed by Sergeant McFadden on February 4, 1993, would be barred from testifying for the Commonwealth. The Commonwealth has other witnesses not tape-interviewed, to-wit, Kenneth Thornton and others whom the police found during their investigation.

The argument of the defendant is clear. The Pennsylvania State Police interviewed witnesses to the accident and taped their answers. The District Attorney of Warren County filed criminal charges against the defendant and Thornton. The Pennsylvania State Police structure a dichotomy between their internal investigation of Officer Thornton's conduct and the District Attorney of Warren County. The District Attorney of Warren County takes a position that it has no connection or information concerning the internal affairs of the Pennsylvania State Police and the interviews flowing therefrom. The district attorney intends to use the tape-interviewed witnesses at the time of trial to convict the defendant McElroy.

All these positions are clearly untenable and outrageous. As early as September 1993, both the district attorney and the Pennsylvania State Police had knowledge that McElroy went through a preliminary hearing and was bound over to court to stand trial on the charges. Yet, neither the district attorney nor the state police made any effort to preserve possible inculpatory evidence to which the defendant is entitled. This is justified by the district attorney as he has no authority over the internal affairs of the state police but yet will freely

---

2. The taped contents were erased; and the tape was not per se destroyed, the erasure being a recording over the interviews by subsequent use.

and gladly use the information that was gathered by them that may be only to the benefit of the Commonwealth. The Pennsylvania State Police have stonewalled any attempt by the defendant to obtain the information gathered by Sergeant McFadden and Corporal Patterson per our opinion as attached hereto. Something is wrong with this line of pretended reasoning. The wrongness, of course, is seasoned police officers as well as district attorneys know the rights of the accused in access to any evidence that would indicate innocence. The alleged eyewitnesses were interviewed one day after the occurrence; the trial will not take place until the distant future when memories fail and witnesses disappear; and all of this is lost to the defendant. We believe the only appropriate sanction that can be imposed under this situation, whether it be deliberate or negligent, is the sanction we imposed.

### ORDER

And now, September 30, 1994, the orders of sanction and of enforcement of the plea agreement are entered.