516 A.2d 17

Peter HAVAS, Appellee,

v.

TEMPLE UNIVERSITY OF the COMMONWEALTH
SYSTEM OF HIGHER EDUCATION and the Board
of Trustees of Temple University, Appellants.

Peter HAVAS, Appellant,

v.

TEMPLE UNIVERSITY OF the COMMONWEALTH
SYSTEM OF HIGHER EDUCATION and the Board
of Trustees of Temple University, Appellees.

Superior Court of Pennsylvania.

Argued March 12, 1986.

Filed Sept. 3, 1986.

Reargument Denied Oct. 20, 1986.

354

Stephen Bosch, Philadelphia, for appellants (at 2000) and for appellees (at 2172).

David H. Moskowitz, Langhorne, for appellant (at 2172) and for appellee (at 2000).

Before WICKERSHAM, WIEAND and POPOVICH, JJ.

WIEAND, Judge:

Where there is neither agreement nor promise by an employer to approve an employee's application for early retirement, may the employer nevertheless be estopped to deny such approval? Our review of the record discloses in this case no basis for an estoppel; and, therefore, we reverse the judgment of the trial court which awarded damages to the employee whose application for voluntary early retirement was disapproved by his employer.

Dr. Peter Havas, a tenured professor of physics at Temple University, had notified his employer that he intended to retire, pursuant to an existing early retirement plan (ERP), on July 1, 1981. On April 3, 1980, the University announced that the trustees and administrators of the University and the American Association of University Professors, a collective bargaining agent for the faculty, had reached agreement on a new voluntary early retirement plan (VERP). When Havas learned of this new plan, he submitted an application for retirement pursuant thereto, effective January 1, 1981. In reliance upon anticipated approval, Dr. Havas made several commitments for research and professional appearances during the six month period following his contemplated retirement. In November of 1980, his application for voluntary early retirement on January 1, 1981 was disapproved. As a result, Dr. Havas' retirement could not become effective until July 1, 1981. In order to keep his professional commitments, he took a leave of absence, without pay, from January 1, 1981 to June 30, 1981.

On April 6, 1982, Havas commenced an action against Temple University for damages. On November 3, 1982, the trial court sustained preliminary objections in the nature of a demurrer to the complaint but granted leave to Dr. Havas to file an amended complaint. An amended complaint was filed on December 6, 1982, and again the University filed preliminary objections in the nature of a demurrer. These preliminary objections were sustained, and judgment was entered in favor of the University on July 22, 1983. On appeal to the Superior Court, a panel of this Court entered a per curiam order reversing and remanding, 339 Pa.Super. 624, 488 A.2d 1169. In a memorandum opinion, the panel recorded its agreement with the trial court that Havas had failed to state a cause of action for breach of contract. Havas knew, the Court observed, that approval by the University was necessary before he could be accepted into VERP. Because such approval was a condition precedent and because approval had not been obtained, the panel said,

there was no agreement that Havas would be permitted to retire on January 1, 1981. The panel reversed and remanded, however, because the trial court had failed to address a separate count in the complaint alleging a cause of action based upon estoppel. Although reversing and remanding for further proceedings on this count of the complaint, the Court cautioned:

> Whether appellant can provide proof of the facts of his cause and of his damages remains for the scrutiny of the court when it considers a motion for summary judgment and/or at the conclusion of the trial of the case.

Upon remand, the action was tried nonjury and resulted in a "Decree Nisi" awarding damages to Dr. Havas in the amount of $53,100.61. The trial court expressly found that "there was no promise and no contract" but allowed recovery on the "ethical principle" of estoppel. (Trial Court Opinion at p. 7). Post-trial motions filed by both parties were dismissed, and judgment was entered on the verdict. Both parties have appealed.

An estoppel requires the presence of two essential elements. The first is an inducement to act. The second is a justifiable reliance upon that inducement. *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 436, 457 A.2d 502, 503 (1983). See also: Restatement (Second) of Contracts § 90. An "inducement" sufficient to create an estoppel may consist of words or conduct which intentionally or negligently causes another to believe that a promise has been made or that a particular state of facts exists. See: *Straup v. Times Herald,* 283 Pa.Super. 58, 71, 423 A.2d 713, 720 (1980). See also: *Novelty Knitting Mills, Inc. v. Siskind, supra.* In the instant case, the record discloses that neither inducement by Temple University nor justifiable reliance by Dr. Havas was present. In short, there was neither representation by the University nor a reasonable belief by Dr. Havas that his application for VERP would escape the contractual requirement that it be submitted for approval or disapproval by the University accord-

ing to concerns and considerations enumerated in the written agreement.

The written agreement between Temple University and the American Association of University Professors, acting as agent for the members of the faculty, made the VERP plan available to members of the faculty who had attained their sixtieth birthday and had completed a minimum of ten years of service to the University. However, the agreement also provided in clear terms that an application for VERP was subject to approval by the Vice President and Dean of Faculties and also by the President of the University. Approval was to be granted or withheld according to the needs of the University. The introductory paragraphs of the agreement were as follows:

Temple University has developed a new Voluntary Early Retirement Plan. This program, participation in which by faculty is voluntary, is intended to provide flexibility in academic planning, to produce educational benefits, and to reduce the costs of instruction necessitated by the changing needs of the University.

. . . .

The Voluntary Early Retirement Plan offers benefits only for certain tenured faculty who wish to terminate voluntarily their active professional relationship with the University before the normal retirement date and only in academic units where the retirement will result in a reduction in instructional costs especially through the non replacement of the retiree.

The intent of the agreement was set forth with even greater particularity in paragraph 4, where it was established specifically as follows:

4. An application for voluntary early retirement must be recommended, and the recommendation justified, by the department chairperson and dean, and must be accompanied by a written statement from the dean explaining how the early retirement will result in educational benefits and net savings for the University over the life of the early retirement period. An

application requires the approval of the Vice President and Dean of Faculties before submission to the President for final approval or disapproval. The President's decision shall not be subject to the grievance and arbitration procedures of the Temple— AAUP contract.

The provisions of this agreement, therefore, made it eminently clear that acceptance into VERP was conditional upon approval by the Vice President, Dean, and President of the University. This approval, in turn, was dependent upon whether early retirement would "result in educational benefits and net savings for the University," and not simply upon an applicant's ability to satisfy objective criteria for eligibility. Dr. Havas, although able to meet the objective standards for VERP, did not receive the necessary approval from the administration.

It is of no avail to Dr. Havas that he did not actually read the provisions of the plan before submitting his VERP application. He cannot legally deny knowledge of the requirements for acceptance into VERP, the terms of which were negotiated and approved by the bargaining agent acting on behalf of the faculty. It would indeed be inequitable to allow Dr. Havas to raise an estoppel by his own carelessness in failing to read and become aware of the terms and conditions for acceptance into VERP. The terms of the plan, to which he was a party via his agent, were clear; there was no suggestion whatsoever that acceptance into VERP would be automatic.

Moreover, the evidence in this case does not establish that Temple University ever misled Dr. Havas about the need for approval of his application for VERP. Similarly, there is no evidence that any misrepresentation was at any time made to him by the administration that his application for VERP would be approved and would go into effect on January 1, 1981. Even Dr. Havas has conceded that no such representation was made to him. Although two of his colleagues had assured him that they would recommend approval of his application, Dr. Havas has admitted that no

official of the University ever promised or guaranteed that he would be accepted into VERP at the time of and in accordance with his application. Even the VERP application itself was devoid of assurance that an applicant who satisfied the objective criteria for admission into VERP would receive automatic and immediate approval. On the contrary, paragraph nine of the application indicated that it would have to be "approved by the University administration." In short, a review of the record discloses a total absence of evidentiary support for the trial court's conclusion "that appellee established the existence of a course of conduct or representations justifying his reasonable expectation that he would be approved for VERP."

The evidence also discloses that Dr. Havas did not believe that his acceptance into VERP would be automatic. His application was filed on June 25, 1980 and contained a request for early retirement on January 1, 1981. It was disapproved on November 18, 1980. During the interval in which it was pending, Dr. Havas repeatedly called the office of the Vice President of the University to determine whether his application would be approved. Moreover, as has already been observed, Dr. Havas admitted that he knew, at the time of submitting his application, that it would have to be approved by the administration before he could be accepted into VERP. There is no evidence that any additional representation was made at any time by the University after the application had been submitted. Therefore, Dr. Havas could not reasonably have believed that his application would receive automatic approval. This is further supported by knowledge which he acquired during the waiting period that his application was being reviewed by Temple's lawyers because of certain legal questions.

The evidence in this case demonstrates unequivocally that Dr. Havas' alleged expectation of VERP approval and his acceptance of job opportunities for the period between January and June, 1981 had not been based upon assurances or representations made by University officials that he could retire early. As we have already observed, the

trial court expressly found that no promises of approval had been given. Dr. Havas' acts taken in reliance upon an anticipated approval of his VERP application, therefore, were premised upon a self-engendered assumption that satisfying the plan's objective criteria would result in routine and automatic approval. The law is clear, however, that there can be no estoppel where a complainant's act or forbearance is caused by his own mistaken judgment. *Blofsen v. Cutaiar*, 460 Pa. 411, 418, 333 A.2d 841, 844 (1975); *Tallarico Estate*, 425 Pa. 280, 288, 228 A.2d 736, 741 (1967); *Northwestern National Bank v. Commonwealth*, 345 Pa. 192, 197, 27 A.2d 20, 23 (1942).

In *Novelty Knitting Mills, Inc. v. Siskind, supra,* the parties had engaged in a course of business wherein the defendant would design and order sweaters which the plaintiff would manufacture. On one occasion, the defendant-designer requested and received permission to store five tons of its yarn at the plaintiff-manufacturer's factory. However, the defendant gave no promise—oral, written, or implied by course of conduct—that an order for the manufacture of sweaters was forthcoming. When the defendant-designer removed the yarn for manufacture at another plant, the plaintiff-manufacturer brought suit against the defendant under a theory of equitable estoppel. The plaintiff-manufacturer contended that by removing the yarn to another manufacturer, the defendant had breached the plaintiff's legitimate expectation that an order to process the yarn into sweaters would be submitted to the plaintiff. The trial court held, and the Superior Court agreed, that the plaintiff-manufacturer had failed to establish an estoppel. The Supreme Court affirmed, holding that nothing in the record justified the plaintiff-manufacturer's expectation that the defendant would place an order for the production of sweaters from the five tons of yarn stored at plaintiff's factory. *Id.* 500 Pa. at 436–437, 457 A.2d at 504. The Supreme Court observed that the plaintiff-manufacturer's president had admitted that such an order was only a "possibility" and that no agreement had been reached re-

garding the future processing of the yarn into sweaters. *Id.*, 500 Pa. at 437, 457 A.2d at 504. "The flexibility of the doctrine of equitable estoppel," the Court opined, "does not allow it to be imposed where the essential elements of inducement and reliance are supported solely by speculation." *Id.*, 500 Pa. at 438, 457 A.2d at 505.

So in the instant case, an estoppel against Temple University cannot be supported by Dr. Havas' unjustified speculation that his VERP application would be approved. In the absence of evidence to support the creation of an estoppel, the trial court erred when it awarded Dr. Havas damages because the disapproval of his VERP application required that he retire on the date which he had selected under the prior retirement plan.

In a cross-appeal by Dr. Havas, he has questioned the measure of damages employed by the trial court. However, our view of the case has made it unnecessary to consider the damage issue.

The judgment is reversed and is now entered in favor of Temple University.