621 A.2d 630

**COMMONWEALTH of Pennsylvania**

v.

**Donald BUTLER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1992.

Filed Feb. 16, 1993.

Chris R. Eyster, Pittsburgh, for appellant.

Edward M. Clark, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before ROWLEY, President Judge, and CAVANAUGH, CIRILLO, OLSZEWSKI, DEL SOLE, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

Appellant comes before us challenging the judgment of sentence entered November 22, 1991. Appellant's post-trial Motions for a New Trial and in Arrest of Judgment were denied. We have entertained this appeal *en banc* because one of the issues raised by appellant is a matter of first impression in this Commonwealth. We note that this same issue is raised in companion cases [1] also being decided by this panel.

Appellant was charged with two counts of indecent assault,[2] two counts of endangering the welfare of children,[3] and two counts of corrupting minors.[4] The court granted appellant's demurrer to three of the counts,[5] but appellant was convicted by a jury on all remaining charges.

The charges against appellant arose from conduct that allegedly occurred at the Apostolic Christian Academy, a school operated by the Apostolic Tabernacle Church located in Pittsburgh, and of which appellant is the pastor. The charges stemmed from the complaint of an 11 year-old student at the school, Raketa Cordo, that appellant had indulged in a prolonged "hugging" episode with her on December 12, 1990. During this encounter, appellant allegedly reached under the victim's skirt and fondled her buttocks, as well as rubbed his clothed genital area against her.

Following his arrest, appellant claims that his attorney entered into an agreement with Pittsburgh police detective James McCarthy, whereby if appellant volunteered to take a polygraph test and passed said test, the charges against him would be dropped. Appellant did, in fact, take such a test and

---

1. *Commonwealth v. Stipetich*, 423 Pa.Super. 427, 621 A.2d 606 (1993), and *Commonwealth v. Scuilli*, 423 Pa.Super. 453, 621 A.2d 620.

2. 18 Pa.C.S.A. § 3126.

3. 18 Pa.C.S.A. § 4304.

4. 18 Pa.C.S.A. § 6301.

5. One count each of the three crimes charged.

passed it. However, after the victim also passed a polygraph test, the Commonwealth decided to bring charges and arrested appellant. Appellant's counsel moved to dismiss the charges on the basis of the alleged deal and the Commonwealth's repudiation of it.

At an ensuing evidentiary hearing on the matter, Detective McCarthy had a somewhat different recollection of the discussions prior to the polygraph test than did appellant's original counsel. Detective McCarthy was generally equivocal, but the tenor of his testimony indicated that he did not remember making any deal with appellant, whereby appellant could wholly escape prosecution merely by passing a lie detector test. The trial court ruled against appellant's motion on the basis that police officers do not have the authority to bind the Commonwealth to agreements. Moreover, the court also found that no agreement actually occurred because there was no meeting of the minds, given the vague, equivocal statements of the police to appellant's attorney. The case then proceeded to trial and, ultimately, conviction. Appellant's post-trial Motions for a New Trial and in Arrest of Judgment were denied.

Appellant raises four issues on appeal. Appellant first claims that the trial court erred in failing to dismiss the charges against him because he had complied with the terms of a binding agreement with agents of the Commonwealth. The contention as to whether police officers can bind the Commonwealth to agreements made with defendants is the issue that connects this case with its companions, *Commonwealth v. Stipetich* and *Commonwealth v. Scuilli.*

Appellant also recites three errors which transpired during the course of his trial. First, appellant claims the trial court erred in refusing to allow admission of his polygraph results at trial. Second, appellant attempted to introduce the testimony of two witnesses who would have testified as to the victim's bad reputation in the community for telling the truth. The court barred this testimony, ruling that reputation evidence was inadmissible. Appellant claims this was error. Third, appellant argues that it was error for the trial court, during

*voir dire,* to disallow the proposed question, "Have you or has any member of your family ever been involved in a rape proceeding or a proceeding involving a sexual crime?"

For the reasons which follow, we vacate the judgment of sentence and remand this case for a new trial.

 Appellant's first claim asks us to hold that the Commonwealth may be bound by the agreements entered into between ordinary policemen and criminal defendants. While such is precisely our ruling in the companion cases *Commonwealth v. Stipetich* and *Commonwealth v. Scuilli,* we find this principle unavailing for the instant appellant. This is so because while the police may bind the Commonwealth by their deal-making, instantly, we are unable to find that an agreement was reached between appellant's lawyer and Detective McCarthy. The trial court specifically stated that the vague statements made to appellant's attorney by the police were insufficient to amount to a meeting of the minds and a bona fide agreement. Our review of the testimony has led us to a similar conclusion. We find no relief for appellant based upon this alleged error.

 We may also quickly dismiss appellant's second argument, that the results of his polygraph test should have been admitted at trial. The trial court properly barred this evidence under long-standing precedent in this Commonwealth. *Commonwealth v. Rodriguez,* 343 Pa.Super. 486, 495 A.2d 569 (1985).

 It is the matter which appellant raises as his third issue which requires us to reverse his conviction. At trial, appellant attempted to introduce evidence of the victim's reputation in the community for untruthfulness. The following exchange transpired:

Q. Now, you have indicated that you have known Raketa Cordo for some period of time?

A. Yes.

Q. How long is that?

A. Three to five years, roughly.

Q. And did you know other individuals in the community who know—

THE COURT: See you a side-bar, Counsel.

(Side-bar discussion.)

MISS ORIE [COMMONWEALTH]: I'd object to this testimony.

MR. LEVENSON [DEFENSE]: Excuse me.

MISS ORIE: I would object to you asking her this stuff about her credibility at this point.

THE COURT: Not her credibility, reputation. Reputation is not at issue. Credibility is at issue not reputation. You can't attack credibility by reputation; talking about reputation testimony.

MR. LEVENSON: I intend to elicit testimony that she has a reputation for being untruthful.

THE COURT: No. Not that way. You can attack credibility but not through reputation character, reputation evidence as to character unless you have case law.

MR. LEVENSON: No.

THE COURT: If you have no case law, I'll sustain the objection.

MR. LEVENSON: I would just indicate for the Court that—

THE COURT: Credibility is always at issue; but you can't attack it by use of reputation character evidence.

MR. LEVENSON: I would just state for the record that I had intended to call as a second witness by the name of Tina Martin who was also going to testify as to her reputation in the community for being untruthful.

THE COURT: No.

Notes of testimony, 9/23–24/91 at 139–40. The ruling of the trial court was incorrect. In deference to the trial court, there may have been some misunderstanding that the defense was attempting to introduce one individual's opinion as to the victim's capacity for deceit. That sort of testimony would properly be excluded. *See Commonwealth v. Smith,* 389 Pa.Super. 626, 567 A.2d 1080 (1989), *allocatur denied,* 527 Pa.

623, 592 A.2d 44 (1990). Nevertheless, it seems obvious to us that the defense was trying to introduce general reputation evidence for truth and veracity, and that is a valid line of attack. *Commonwealth v. Smith, supra. See also Commonwealth v. Hansell,* 185 Pa.Super. 443, 137 A.2d 816 (1958). Therefore, we must reverse the judgment of sentence and remand for a new trial.

Appellant's final contention is that the trial court erred in not allowing appellant to ask jurors at *voir dire* whether they or any member of their family had ever been involved in a proceeding connected to a rape or other sexual crime. Appellant cites *Commonwealth v. Fulton,* 271 Pa.Super. 430, 413 A.2d 742 (1979), in which this court found prejudicial error in the trial court's refusal to permit this very question. Because our prior determination that a new trial is required renders this issue moot, we specifically decline to review it.

In conclusion we reiterate that we find merit in appellant's contention that the trial court committed reversible error in barring testimony as to the victim's reputation in the community for truth and veracity.

Accordingly, the judgment of sentence is reversed and the case is remanded for a new trial. Jurisdiction relinquished.

OLSZEWSKI and POPOVICH, JJ. concur in the result.

OLSZEWSKI, J. files a Concurring Statement in which ROWLEY, P.J. joins.

CIRILLO, J. files a Dissenting Opinion.

OLSZEWSKI, Judge, concurring:

I concur in the result. I agree with the majority's disposition of all issues save one. In discussing whether the charges against appellant should have been dismissed, the majority finds that the facts do not support Butler's contention that a non-prosecution agreement had ever been reached.

As a predicate for its discussion of the issue, however, the majority states that the police may enter into an agreement that is enforceable against the district attorney. The majority

writes: "Appellant's first claim asks us to hold that the Commonwealth may be bound by the agreements entered into between ordinary policemen and criminal defendants. While such is precisely our ruling in [*Stipetich* ] and [*Scuilli* ], we find this principle unavailing for the instant appellant." Majority at 631 (citing *Commonwealth v. Stipetich*, 423 Pa.Super. 427, 621 A.2d 606 (1993); *Commonwealth v. Scuilli*, 423 Pa.Super. 453, 621 A.2d 620 (1993). What the majority recognizes as the precise ruling of *Stipetich* and *Scuilli*, however, is the precise issue that *Stipetich* declined to address: "Despite the arguments of the Commonwealth to the contrary, we deem unnecessary, to the disposition of this case, the exploration of whether 'the police' as an entity, have authority to enter into non-prosecution agreements." *Stipetich*, 423 Pa.Super. at ——, 621 A.2d at 608. *See, Scuilli*, 423 Pa.Super. at ——, 621 A.2d at 625 ("more significant" than discussing the authority of the police to enter into non-prosecution agreements is whether defendant performed his end of bargain).

In both *Stipetich* and *Scuilli*, the dissents note a concern that while a majority of this Court proclaims that it is not deciding whether the police have authority to enter into agreements that bind an unsuspecting district attorney, it effectively does so. After its interpretation of *Stipetich* and *Scuilli* here, this majority should "acknowledge the corn." [1]

Enforcing a non-prosecution agreement entered into by a police officer without the district attorney's knowledge essentially sanctions a usurpation of the district attorney's legislatively ordained power to conduct all criminal prosecutions. *Stipetich*, 423 Pa.Super. at ——, 621 A.2d at 614 (Olszewski, J., dissenting); *Scuilli*, 423 Pa.Super. at ——, 621 A.2d at 629 (same); 16 Pa.S. § 4402(a). It seems that this Court, by vesting a trial judge with the discretion to dismiss charges against a defendant when he has been made an improper police promise, is disrupting a system of administering justice

1. Congressman Charles A. Wickliffe of Kentucky, as quoted in: Funk, *A Hog on Ice & Other Curious Expressions*, Harper & Row, 1985; *see Commonwealth v. Murray*, 408 Pa.Super. 435, 444, 597 A.2d 111, 116 (1991) (Olszewski, J., concurring and dissenting).

that, until *Stipetich* and its progeny, has been settled. I cannot join the majority to the extent that this is so.

In this case, the existence of an improper agreement between the police and Butler should only be relevant if appellant argues that evidence admitted into the trial was obtained unconstitutionally. Otherwise, the existence of an agreement is irrelevant since, in my opinion, it cannot form the basis for a dismissal of charges. Since the majority did not dismiss the charges against Butler on these grounds, but rather remanded for a new trial on the evidentiary matter, I most respectfully concur in the result.

CIRILLO, Judge, dissenting.

I respectfully dissent. While the Commonwealth concedes that a new trial is warranted, I find this remedy inadequate for Butler, who instead deserves to have the charges against him dismissed.

Initially, it is not clear from the trial court proceedings whether Butler made a knowing and intelligent waiver of the constitutional rights he surrendered during the polygraph examination, specifically, his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel. It is well settled that an individual may knowingly and intelligently waive a constitutional right, *Commonwealth v. Carey*, 235 Pa.Super. 366, 340 A.2d 509 (1975), however, for that individual to be able to make a knowing and intelligent waiver of such a right, he must be aware of both the nature of the constitutional right and the risk of forfeiting it. *Commonwealth v. Coleman*, 477 Pa. 400, 383 A.2d 1268 (1978); *Commonwealth v. Johnson*, 319 Pa.Super. 463, 466 A.2d 636 (1983). In such a situation the record must clearly demonstrate an intentional relinquishment of a known right or privilege. *Commonwealth v. Hill*, 492 Pa. 100, 422 A.2d 491 (1980). Furthermore,

the presumption must always be against the waiver of a constitutional right. Nor can waiver be presumed where the record is silent. The record must show, or there must be an allegation and evidence which show, that an accused

was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver. Thus, this Court is constitutionally bound to place the burden of proving waiver on the Commonwealth.

*Commonwealth v. Monica,* 528 Pa. 266, 597 A.2d 600 (1991) (citations omitted).

Therefore, in light of the fact that we are dealing with constitutionally protected rights, a finding of voluntary waiver of these rights is necessary before determining whether or not an actual agreement existed between Butler and the Commonwealth regarding the results of the polygraph examination.

I am aware of the fact that both the trial court and the majority have found no valid agreement between Butler and the Commonwealth to dismiss the charges based upon Butler's passing score on the polygraph test.[1] However, it is my position that Butler nonetheless may prevail on an estoppel theory.[2] To prevail on this theory requires two essential elements:

The first is an inducement to act. The second is a justifiable reliance upon that inducement. An "inducement" sufficient to create an estoppel may consist of words or conduct

1. I note, parenthetically, that while no agreement has been found to exist instantly, there is authority in support of the view that an agreement between the state and a defendant that charges will be dropped if the defendant successfully passes a lie detector examination is enforceable. *See People v. Starks,* 146 Ill.App.3d 843, 100 Ill.Dec. 307, 497 N.E.2d 187 (2d Dist.1986); *Butler v. State,* 228 So.2d 421 (Fla.App. 1969); *State v. Davis,* 188 So.2d 24 (Fla.App.1966), *cert. denied,* 194 So.2d 621 (Fla.1966).

2. Because estoppel is used most often in an attempt to enforce agreements or contracts in civil settings, it is worth noting that contract law principles find their way into situations analogous to the instant appeal. For instance, the Court of Appeals in *United States v. Pelletier,* 898 F.2d 297, 301–2 (2d Cir.1990) stated:

To secure a defendant's cooperation and plea, the government may formally grant him use immunity in exchange for his cooperation. Since a cooperation/immunity agreement is in the nature of a contract, its effect is strongly influenced by contract law principles. The remedies available in event of breach, as well as the conditions constituting breach, are governed by the agreement. *Unlike the normal commercial contract, however, due process requires that the government adhere to the terms of any plea bargain or immunity agreement it makes.* (citations omitted, emphasis added).

which intentionally or negligently causes another to believe that a promise has been made or that a particular fact exists.

*Havas v. Temple University of Com. System*, 357 Pa.Super. 353, 356, 516 A.2d 17, 18–19 (1986), *appeal denied*, 515 Pa. 581, 527 A.2d 541 (1987) (citations omitted). A party claiming estoppel must have relied on his adversary's conduct in such a manner as to change his position for the worse, and that reliance must have been reasonable in that the party claiming the estoppel neither knew nor should have known that his adversary's conduct was misleading. *Heckler v. Community Health Services*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). When a party is deprived of something to which he was entitled of right, he has surely suffered a detrimental change in its position for purposes of estoppel. *Id.* at 62, 104 S.Ct. at 2225.

Although historically the estoppel theory has been used primarily in the realm of civil actions, it would be difficult to imagine a more fitting set of circumstances in which to apply it to criminal matter than the case at hand. Clearly, there was inducement by the police department for Butler to submit himself to the polygraph examination, *Havas, supra;* it was promised that the charges would be dropped if a passing score were achieved. In reliance upon this deal, Butler surrendered his constitutionally protected privilege against self-incrimination and right to counsel. In the end Butler received nothing in return for these waivers, as criminal charges were brought against him even though he had passed the exam. Butler's reliance was undoubtedly reasonable, *Heckler, supra,* as a reasonable person would expect that a law enforcement officer would see to it that his or her end of the bargain would be upheld. Above all, Butler was deprived of something to which he was entitled to as of right, namely his constitutional protections. *Heckler, supra.* The detrimental change Butler suffered as a result of these deprivations is such that unless the charges against him are dismissed, he shall not be made whole; his constitutional rights have been waived. The Commonwealth must be estopped from claiming that no deal ever

existed. Additionally, unlike a civil proceeding, here a defendant's liberty is at stake, all the more reason for an estoppel argument to be applied in a criminal context. It is for these reasons that I would uphold the agreement in question and dismiss the charges against Butler.