2025 PA Super 266

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSE LOUGHRAN | : | No. 82 MDA 2025 |

Appeal from the Order Entered January 7, 2025
In the Court of Common Pleas of Schuylkill County
Criminal Division at No(s): CP-54-CR-0000582-2024

BEFORE: PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.*

OPINION BY PANELLA, P.J.E.:        **FILED: NOVEMBER 26, 2025**

The Commonwealth appeals from the trial court's pretrial order denying the Commonwealth's motion in limine seeking to exclude defense expert witness testimony. To the extent the trial court's order permitted public disclosure at trial of the victim's mental health diagnosis, the order was an appealable collateral order and is vacated. We lack jurisdiction to review the remainder of the trial court's order. Therefore, we vacate in part, quash in part, and remand for further proceedings.

Loughran was charged with aggravated assault (18 Pa.C.S.A. § 2702(a)(1)), aggravated assault—victim less than six years of age and defendant 18 or older (18 Pa.C.S.A. § 2702(a)(8)), strangulation (18 Pa.C.S.A. § 2718(a)(1)), terroristic threats—terrorize another (18 Pa.C.S.A. §

---

* Former Justice specially assigned to the Superior Court.

2706(a)(1)), simple assault—bodily injury under 12 years old (18 Pa.C.S.A. § 2701(b)(2)), simple assault (18 Pa.C.S.A. § 2701(a)(1)), and two counts of harassment (18 Pa.C.S.A. § 2709(a)(1)). The Commonwealth alleged an incident of domestic violence took place on April 16, 2024, where Loughran physically abused his ex-girlfriend, Cheyenne Murphy, and her four-year-old daughter, C.T.[1] As testified to by Cheyenne Murphy at the preliminary hearing, the Commonwealth alleges the following facts occurred.

On the afternoon of April 16, 2024, Murphy returned with C.T. to the residence she shared with Loughran. Loughran began berating Murphy and C.T. over the state of the house. His aggression and physical violence continued to escalate. He shoved C.T. into the bathroom and ordered her to clean crayon markings from the tub. He went to the kitchen, where Murphy was making dinner, and unsuccessfully attempted to press her face into a hot skillet. Under Loughran's direction, Murphy joined C.T. in the bathroom to clean the tub. Upon Murphy exiting the bathroom, Loughran shoved Murphy into the shower and picked C.T. up and threw her into the tub. Then Loughran grabbed C.T. by the hair, which caused a bald spot, and dragged her to the kitchen. As Murphy tried to protect her daughter, Loughran repeatedly struck her in the face and head with a closed fist and kicked her back and stomach.

---

[1] In its brief the Commonwealth repeatedly refers to C.T. by her first name. Although the Commonwealth does not use C.T.'s last name, we caution the Commonwealth on disclosing identifying information of a minor.

Murphy went towards the front door with C.T. and Loughran slammed Murphy's head against the door and deadbolted it. Then Loughran put Murphy into a choke hold to the point she could not breathe and her vision blackened. Murphy broke free and while she was holding C.T., Loughran pushed them down the basement stairs. The basement has a door to the garage. Loughran made a series of threatening statements to Murphy such as "[n]o one is safe if you leave", that he would slit her throat, that he would "take [her] to [his] mom's house so [he] can kill [his mom's] boyfriend and [Murphy] too." Regarding C.T., Loughran threatened to chop her head off with an axe and to "carve" her in front of her mother. Eventually, Murphy and C.T. managed to leave the house.

On the same day, Murphy and C.T. received emergency medical treatment. Murphy had bruising on her face and bruising and a large scrape on her leg that made it difficult for her to walk in the ensuing days. C.T. had a bump on her lower back that required a follow-up appointment. That same day, Loughran was charged with the previously mentioned offenses and the charges were held for court at his later preliminary hearing.

The matter currently before us on appeal relates to the proposed testimony of Loughran's expert witness, Dr. W. Anthony Gerard.[2] Dr. Gerard is an emergency physician who has extensive experience with evaluating

---

[2] Loughran also filed a habeas corpus motion that the trial court denied.

assault and strangulation injuries. Based on his review of the medical records, Dr. Gerard's report recounted Murphy's and C.T.'s emergency medical treatment. At the beginning of his report, Dr. Gerard stated that his "focus was on the medical issues involved in this case to see if the medical evidence supports the testimony and statements in this case." Dr. Gerard Report, 10/21/24, at 1.

The "Past Medical History" section of Murphy's medical records contained previous medical and mental health diagnoses, which included an undated notation that Murphy previously was diagnosed with Oppositional Defiant Disorder ("ODD"). Dr. Gerard opined on Murphy's ODD diagnosis.

> Her [past] diagnosis of [ODD] may be relevant to this case. I often treat adults who have this diagnosis, and they tend to be prone to disruptive behaviors, but I am not a psychiatrist. This disorder leads to a persistent pattern of angry or irritable mood, argumentative or defiant behavior, and vindictiveness toward others. This diagnosis suggests that Ms. Murphy was prone to altercations.

*Id.* at 2.[3]

He further opined "to a reasonable degree of medical certainty that the medical evidence is inconsistent with the allegations of serious bodily injury and strangulation." *Id.* at 3. The report contained a section that went into further detail regarding the medical definition of strangulation and why that was not present with Murphy. *See id.* at 4-5. Regarding C.T., he recognized

---

[3] This portion of the report contained a hyperlink to a book entry on ODD that Dr. Gerard did not author.

that she had a bald spot on her scalp but "that might be normal for her[,]" i.e., not the result of trauma. *Id.* at 4. Further, the report had a brief section on confirmation bias. Dr. Gerard stated:

> The medical records on this case show confirmation bias which is very common on emergency department records. . . . Medically speaking, physicians commit this logical error when a patient gives a history that is later undermined by the medical facts found on the exam and testing. When this happens, the preliminary diagnosis, or claims made by the patient, unduly effect the final diagnosis, in spite of contradictory evidence.

*Id.* at 5.

Ultimately, Dr. Gerard concluded that the documented medical evidence for both Murphy and C.T. did not match Murphy's version of events or demonstrate that she was "strangled, punched in the face, or thrown down the stairs." *Id.* at 5-6.

The Commonwealth filed a motion in limine seeking to preclude Dr. Gerard's potential testimony based on his report. The Commonwealth sought to limit Dr. Gerard's testimony regarding confirmation bias, Murphy's ODD diagnosis, and his opinion that the medical evidence did not match Murphy's version of events. *See* Com.'s Mot., 12/27/24, at ¶ 20-53. The Commonwealth objected to this potential testimony on various grounds, including the testimony being speculative, irrelevant, impermissible character evidence; outside the scope of Dr. Gerard's expertise; lack of foundation; inadmissible hearsay; and invading the province of the jury. *See id.*

At oral argument on January 7, 2025, the trial court denied the Commonwealth's motion in limine. **See** N.T., 1/7/25, at 13, 23. Responding to the Commonwealth's question of whether Dr. Gerard would be permitted to "opine what [Murphy's ODD diagnosis] means about her character and personality at trial[,]" the trial court responded "[i]f that is part of his expert report." **Id.** at 21-22.

After argument, the trial court issued a written order denying the Commonwealth's motion.[4] The order stated, in pertinent part:

> [I]t is hereby ordered and decreed that the Commonwealth's motion is denied.[a]
>
> Upon laying of a proper foundation and expert qualifications of Dr. Gerard, [Loughran] shall be allowed to call Dr. Gerard as an expert witness to testify as to his expert opinions within his report that are held to a reasonable degree of medical certainty. Subject to cross examination, Dr. Gerard shall be allowed to testify regarding his expert opinion on confirmation bias[b] and regarding the medical evidence in the victim's medical records that support his expert opinion so long as a proper foundation is laid.
>
> > [a] We find that **Commonwealth v. Walters**, 323 A.3d 151 (Pa. 2024) does not preclude the testimony of Dr. Gerard. **Walters** dealt with an expert who provided an opinion based upon witness accounts and not physical findings. **Id.** at 157. We find that Dr. Gerard's report is based upon his review of medical records, photographs and the medical evidence as opposed to a witness's testimony. This is therefore proper and not in violation of Pa.R.E. 701.

---

[4] The following day, January 8, 2025, the Commonwealth and Loughran entered a "Joint Stipulation to Amend Record" to submit Dr. Gerard's expert report into the record after it was not offered to the trial court at the hearing the previous day.

[b] We find that Dr. Gerard's potential testimony regarding confirmation bias is not speculative but moreover the probative value offered by the report outweighs any prejudice.

Order, 1/7/25, at 1-2.

On January 16, 2025, the Commonwealth filed its notice of appeal in which it "certifie[d]" that the trial court's order denying its motion in limine "will terminate or substantially handicap the prosecution." Notice of Appeal, 1/16/25. The Commonwealth filed a concise statement of errors complained of on appeal and the trial court filed an opinion in support of its ruling.[5] *See* Pa.R.A.P. 1925(a)-(b).

On appeal, the Commonwealth raises the following issues related to the trial court denying its motion in limine.

1. Did the pre-trial court (Hale, J.) err in its January 7, 2025 order by permitting [Loughran's] proposed expert witness—who is neither a psychiatrist nor a psychologist—to testify about a strangulation victim's purported [ODD] where the only evidence of such a disorder was a single unsigned, undated, and unsupported notation in a comprehensive medical record; moreover where no evidence was presented at the hearing to establish that this single notation in a medical record is the type of evidence typically relied upon by experts in the field to form opinions about a strangulation victim's traits of character related to [ODD]; and further, where the proposed expert failed to state his opinion with a reasonable degree of certainty in his expert report? *See generally* Pa. R. Evid. 403; art. 7; 802.

2. Did the pre-trial court (Hale, J.) err in its January 7, 2025 order by permitting [Loughran's] proposed expert witness to render

_____

[5] The Honorable Christina E. Hale presided over the pretrial proceedings. After the Commonwealth filed its notice of appeal, the case was reassigned, and the Honorable Christopher W. Hobbs authored the 1925(a) opinion.

speculative opinions at trial about how a purported diagnosis of [ODD] would have caused the victim to exhibit specific traits of character during her strangulation and subsequent reporting to the police, which traits of character were proffered to be "persistent patterns of anger, irritability, mood, argumentative [character], or defiant behavior and vindictiveness towards others"; where such opinion testimony constitutes impermissible character evidence about the victim's traits of character, unsupported by reputation, specific instances of conduct, or any other permissible basis, and resting solely on speculative opinion? ***See generally*** Pa. R. Evid. 404 & 405.

3. Did the pre-trial court (Hale, J.) err in its January 7, 2025 order by permitting [Louhgran's] proposed expert witness to testify to the ultimate legal question of whether an aggravated assault occurred, rather than limiting testimony to medical opinions within the expert's domain of competence—such as whether strangulation occurred? The pre-trial court denied the Commonwealth's motion to exclude such legal conclusions, allowing improper testimony that exceeded the scope of expert medical opinion. ***See generally*** Pa. R. Evid. 403; art. 7.

Appellant's Brief, at 2-3 (suggested answers and unnecessary emphasis omitted) (sixth alteration in original).

In its Opinion of Court Pursuant to Pa.R.A.P. 1925, the trial court stated the following in support of its conclusion to deny the Commonwealth's motion in limine:

The crux of the Appellant's argument in support of its Motion in Limine and on appeal is that Dr. Gerard should be precluded from rendering a medical opinion that touches upon character evidence concerning one of the alleged victims, Cheyenne Murphy's, diagnosis of Oppositional Defiance Disorder. (N.T. 1/7/25, at pp. 5-6). Appellant's basis for this argument is the proposition that Ms. Murphy's behavior stemming from her ODD diagnosis is character evidence. **The court specifically rejected this argument determining that the expert would be testifying regarding Ms. Murphy's medical diagnosis as opposed to her character.** The court properly determined that Dr. Gerard's testimony about his qualifications as well as expert opinion would

- 8 -

be subject to cross-examination, limited to testimony about the victim's medical diagnosis rather than character evidence, and for the trier of fact to accept or reject. (*Id.* at 6-13). Dr. Gerard's medical opinion may certainly aid the trier of fact in determining whether the alleged injuries prove Appellant assaulted or strangled Ms. Murphy. With respect to Appellant's argument that there is a miniscule amount of evidence regarding Ms. Murphy's ODD diagnosis in the record, the court properly determined that this is an area subject to cross examination by the Appellant.

Trial Court Opinion, 2/18/25, at 4 (emphasis added; footnote omitted).

Before addressing the issues raised by the Commonwealth, we must address Loughran's claim that we lack appellate jurisdiction. "Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review plenary." **Commonwealth v. Cross**, 317 A.3d 655, 657 (Pa. Super. 2024) (citation omitted). "[A]n appeal may only be taken from: 1) a final order or one certified by the trial court as final; 2) an interlocutory order as of right; 3) an interlocutory order by permission; or 4) a collateral order." **Commonwealth v. Parker**, 173 A.3d 294, 296 (Pa. Super. 2017) (citation omitted).

In its notice of appeal and brief, the Commonwealth certified that we have jurisdiction under Rule 311(d) as an interlocutory order as of right. **See** Notice of Appeal, 1/16/25; Appellant's Brief, at 1.[6] However, we agree with Loughran that we do not have jurisdiction under Rule 311(d).

---

[6] We note that the Commonwealth asserts that we have jurisdiction under Rule 311(d) but offers no argument in its brief on the matter of jurisdiction. **See generally** Appellant's Brief.

Under Rule 311(d), "the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). "[T]he classic case of an interlocutory order appealable by the Commonwealth as of right [] is one granting a defense motion to suppress evidence." **Commonwealth v. McKnight**, 305 A.3d 582, 586 (Pa. Super. 2023), *appeal denied*, 327 A.3d 184 (Pa. 2024) (citation omitted). However, "other kinds of orders that d[o] not implicate the loss of evidence[,]" but would still terminate or substantially handicap the prosecution are appealable under Rule 311(d). **Commonwealth v. Pownall**, 278 A.3d 885, 900 (Pa. 2022) (recognizing cases where the compelled disclosure order of subject of grand jury investigation and order quashing some though not all charges were appealable as of right); **see also Commonwealth v. Luckey**, 333 A.3d 480, 486 (Pa. Super. 2025) (*per curiam*), *appeal denied*, No. 115 EAL 2025, 2025 WL 2601260 (Pa. Sept. 9, 2025) (holding that a pretrial discovery order granting the defense's request to obtain the assault victim/sole witness's new residential address and to conduct an in-person interview in her home was appealable under Rule 311(d) because it had "the practical effect of excluding evidence necessary to the Commonwealth's prosecution of its case[,]" where the victim indicated that she would not cooperate if forced to reveal her address to the defense). Importantly, "the Commonwealth's right to interlocutory appeals does not

- 10 -

extend to appealing the admission of defense evidence." ***Commonwealth v. Cosnek***, 836 A.2d 871, 876 (Pa. 2003).[7]

As our Supreme Court has stated, "in every case in which we have permitted a Commonwealth appeal as of right, the order appealed from had a tangible or practical effect on the Commonwealth's actual ability to prosecute its case." ***Pownall***, 278 A.3d at 901-02 (Pa. 2022) (footnote omitted). Pretrial orders whose effect is speculative and hypothetical—based on evidence not yet adduced at trial—are not appealable under Rule 311(d). ***See id.*** Further, absent an order that terminates or substantially handicaps the prosecution, our Supreme Court has rejected the notion that the Commonwealth's good faith certification is itself sufficient for an appeal as of right under Rule 311(d). ***See id.*** 278 A.3d at 900 n.14.

The order in the instant case is not appealable under Rule 311(d). The order declined to preclude defense expert testimony at the pretrial stage without first hearing the trial testimony. An order declining to preclude the introduction of defense evidence is not appealable under Rule 311(d) because

_____

[7] Our Supreme Court explained the importance of this rule.

> Were this Court to allow the Commonwealth to appeal rulings admitting defense evidence as of right, the accused would be forced to balance his right to a trial without delay with his fundamental right to present evidence. The chilling effect of such a choice would give the Commonwealth an unwarranted and unfettered influence over the defense case[.]

***Cosnek***, 836 A.2d at 876.

- 11 -

it does not terminate or substantially handicap the prosecution. *See Cosnek*, 836 A.2d at 876; *see also Commonwealth v. Minich*, 4 A.3d 1063, 1067 (Pa. Super. 2010) ("Because the order at issue here denies a motion *in limine* filed by the Commonwealth to preclude the introduction of defense evidence, section 311(d) does not confer us with jurisdiction over the Commonwealth's appeal."). Additionally, the order is clear that the admission of the expert testimony is predicated on the testimony that is adduced at trial. As such, the effect of the order is speculative and hypothetical. *See Pownall*, 278 A.3d at 901-02. Further, because the order does not terminate or substantially handicap the prosecution, the Commonwealth's good faith certification is alone insufficient to grant us jurisdiction. *See id.* at 900 n.14. Thus, contrary to the Commonwealth's assertion, we do not have jurisdiction under Rule 311(d).

We address other possible grounds for appealability.[8] Nothing in the record indicates that the order is a final order or that the trial court certified the order as an interlocutory order by permission. *See* Pa.R.A.P. 341(b)(c); 42 Pa.C.S.A. § 702(b).

---

[8] The Commonwealth only asserts that the order was appealable under Rule 311(d), and Loughran only argues that we do not have jurisdiction under Rule 311(d). However, we address the other grounds for appealability since it implicates our appellate jurisdiction and thus, may be raised by this Court *sua sponte*. *Commonwealth v. Myers*, 325 A.3d 790, 793 (Pa. Super. 2024).

A collateral order is defined as an order that "(1) is separable from and collateral to the main cause of action; (2) involves a right that is too important to be denied review; and (3) presents a question, which is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." *Minich*, 4 A.3d at 1067 (citing Pa.R.A.P. 313(b)) (additional citation omitted). "[T]his court construes the collateral order doctrine narrowly to avoid piecemeal determinations and protracted litigation." *Commonwealth v. Jerdon*, 229 A.3d 278, 284 (Pa. Super. 2019) (citation omitted). Further, "the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." *Rae v. Pa. Funeral Directors Ass'n*, 977 A.2d 1121, 1130 (Pa. 2009).

We discern two legal issues raised by the Commonwealth's challenge to the trial court's order: the public disclosure of Murphy's ODD diagnosis and expert testimony on the ultimate legal issue. The first and third prong of a collateral order are clearly met for both issues—reviewing the trial court's pretrial order does not require consideration of Loughran's guilt or innocence and if Loughran is acquitted the Commonwealth's ability to appeal the trial court's pretrial order will be lost. *See Minich*, 4 A.3d at 1067-68. We must consider whether the issues raised by the Commonwealth also involve rights that are too important to be denied review.

For the importance prong, "it is not sufficient that the issue be important to the particular parties. Rather, it must involve rights deeply rooted in public policy going beyond the particular litigation at hand." ***Commonwealth v. Dennis***, 859 A.2d 1270, 1278 (Pa. 2004) (brackets and citation omitted). Additionally, "an issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule." ***Commonwealth v. Watson***, 952 A.2d 541, 552 (Pa. 2008) (citation omitted).

Pennsylvania courts have consistently held that trial court orders overruling claims of privilege and requiring disclosure of a victim's medical or mental health records are immediately appealable. ***Toland v. Pennsylvania Bd. of Prob. & Parole***, No. 11 EAP 2024, 2025 WL 2825637, at *10 (Pa. filed Oct. 6, 2025) ("[O]rders overruling claims of privilege and requiring disclosure are immediately appealable" under the collateral order doctrine); ***Commonwealth v. Segarra***, 228 A.3d 943, 949 (Pa. Super. 2020) (same) (citation omitted). These cases satisfied the importance prong because "claims of privilege implicate rights rooted in public policy, and impact individuals other than those involved in the litigation." ***Commonwealth v. Harris***, 32 A.3d 243, 248 (Pa. 2011) (citation omitted).

The instant case does not involve a trial court overruling a claim of privilege and requiring the disclosure of privileged information. The

- 14 -

Commonwealth never challenged the trial court order on that basis. Furthermore, it is questionable whether the notation of Murphy's prior ODD diagnosis in her medical file is privileged information. *See Commonwealth v. T.J.W.*, 114 A.3d 1098, 1105 (Pa. Super. 2015) ("files containing diagnoses, opinions, evaluations, and treatment plans [. . . ] are not confidential communications from the client covered under [the psychiatrist-patient privilege].") (citation omitted).

However, the public disclosure of Murphy's ODD diagnosis implicates another right deeply rooted in public policy, the constitutional right to privacy. "The right to informational privacy is guaranteed by Article 1, Section 1 of the Pennsylvania Constitution[.]" *Pennsylvania State Educ. Ass'n v. Commonwealth Dep't of Community & Econ. Dev.*, 148 A.3d 142, 158 (Pa. 2016). The right to privacy includes avoiding disclosure of personal information or personal matters. *See Dougherty v. Heller*, 138 A.3d 611, 629 (Pa. 2016). "The object of such a right is, in part, to protect an individual from revealing matters which could impugn his character and subject him to ridicule or persecution." *Stenger v. Lehigh Valley Hosp. Ctr.*, 609 A.2d 796, 800 (Pa. 1992).

Avoiding public disclosure at trial of Murphy's ODD diagnosis implicates her right to privacy. Such a right is too important to be denied review. Thus, to the extent the trial court's order permits such disclosure at trial, the trial court order is an appealable collateral order, which we have jurisdiction to

review. However, the other issue raised by the Commonwealth merely implicates the scope of expert testimony. This does not satisfy the importance prong and thus, we lack jurisdiction over that claim. **See Gormley v. Edgar**, 995 A.2d 1197, 1201 n.3 (Pa. Super. 2010) (reviewing the issues involving claims of privilege for a collateral order but declining to review the trial court's relevancy determination and application of the discovery rules).

Proceeding to the merits of the ODD issue, the Commonwealth's challenge to the trial court's pretrial ruling implicates the admissibility of evidence. "The admissibility or exclusion of evidence are subject to the abuse-of-discretion standard of review." **Commonwealth v. Ellis**, 313 A.3d 458, 462 (Pa. Super. 2024) (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Thompson**, 106 A.3d 742, 754 (Pa. Super. 2014) (citation omitted). "Furthermore, if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error." **Commonwealth v. Wallace**, 244 A.3d 1261, 1269 (Pa. Super. 2021), *affirmed*, 289 A.3d 894 (Pa. 2023) (citation and brackets omitted).

The Commonwealth asserts two grounds by which the trial court erred in denying the motion in limine. First, the Commonwealth argues that Dr.

Gerard's potential testimony about Murphy's ODD diagnosis lacks a proper foundation and was not expressed in his expert report with the requisite certainty. **See** Appellant's Brief, at 15-24. Second, Dr. Gerard's use of his speculative opinion on her ODD diagnosis to link Murphy to character traits of "angry or irritable mood, argumentative or defiant behavior, and vindictiveness toward others," is inadmissible character evidence because it improperly suggests that Murphy acted in conformity with those traits. **See id.** at 25-32.

Both Loughran and the trial court generally assert the same positions. First, Dr. Gerard is qualified and will only be permitted to testify at trial upon laying of a proper foundation and within a reasonable degree of medical certainty. **See** Appellee's Brief, at 20-24; Trial Court Opinion, 2/18/25, at 3-4. Second, Dr. Gerard would be testifying about Murphy's ODD diagnosis and manifestation of her symptoms, not about her character. **See** Appellee's Brief, at 25-27; Trial Court Opinion, 2/18/25, at 4-5; N.T., 1/7/25, at 7-9, 21-22. Notably, neither Loughran nor the trial court offer a reason for why Dr. Gerard's testimony that Murphy was previously diagnosed with ODD is relevant or probative.

Regarding the admissibility of expert testimony, "the expert must base the substance of her opinion on a reasonable degree of certainty instead of mere speculation." **Commonwealth v. Gonzalez**, 109 A.3d 711, 727 (Pa. Super. 2015) (citation omitted). "While an expert need not use 'magic words,'

the foundation of her opinion must still be sturdy." ***Commonwealth v. Yocolano***, 169 A.3d 47, 61 (Pa. Super. 2017).

Pa.R.E. 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Under this rule,

> expert testimony is incompetent if it lacks an adequate basis in fact. While an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence. This means that expert testimony cannot be based solely upon conjecture or surmise. Rather, an expert's assumptions must be based upon such facts as the jury would be warranted in finding from the evidence.

***Id.*** at 726-27 (citation omitted).

Here, in his report, Dr. Gerard stated that Murphy's ODD diagnosis "may be relevant to this case" and "suggests that Ms. Murphy was prone to altercations." Dr. Gerard Report, 10/21/24, at 2. Such statements are not expressed with the requisite degree of certainty to qualify as competent expert testimony. ***See Gonzalez***, 109 A.3d at 727 (affirming exclusion of expert testimony that rape victim's mental health conditions may have affected her perception and recollection because it lacked the requisite degree of certainty). Therefore, we agree with the Commonwealth that Dr. Gerard's opinion in his report was not made with the requisite degree of certainty.

Next, we agree with the Commonwealth that such testimony would be inadmissible character evidence. Pennsylvania Rules of Evidence 404(a) and 608 concern the admissibility of evidence of a victim's character trait. Under Rule 608, with certain exceptions, a witness's credibility may be attacked or supported by reputation evidence of truthfulness or untruthfulness. Pa.R.E. 608(a).

Under Rule 404(a), evidence of a person's character trait is generally inadmissible to prove that on a particular occasion the person acted in conformance with the character or trait. Pa.R.E. 404(a)(1). However, "subject to limitations imposed by statute a defendant may offer evidence of an alleged victim's pertinent trait[.]" Pa.R.E. 404(a)(2)(B). Such "pertinent" traits may be proven by reputation evidence or specific instances of conduct but may not be proven by opinion testimony. *See* Pa.R.E. 405(a)-(b)(2). A "pertinent" trait "is limited to a character trait of the victim that is relevant to the crime or defense at issue in the case." *Minich*, 4 A.3d at 1072. "Thus, under Rule 404, evidence of the victim's 'pertinent trait' is limited in scope and must be relevant to the offense." *Commonwealth v. Weeden*, 253 A.3d 329, 338 (Pa. Super. 2021), *affirmed*, 304 A.3d 333 (Pa. 2023). Importantly, opinion testimony is inadmissible to establish a character trait. *See* Pa.R.E. 405(a); 608(a); *see also Commonwealth v. Butler*, 621 A.2d 630, 632 (Pa. Super. 1993) (*en banc*) (explaining that "one individual's opinion as to the victim's capacity for deceit[]" is inadmissible).

Loughran and the trial court's distinction that Dr. Gerard's proffered testimony merely concerns the manifestation of Murphy's ODD symptoms rather than her character is illusory. In this case, the purported symptoms of "angry or irritable mood, argumentative or defiant behavior, and vindictiveness toward others" qualify as character traits. Indeed, based on our review of the record, we are uncertain what Loughran's purpose is for admitting Dr. Gerard's expert opinion about Murphy's ODD symptoms since the parties did not discuss either its relevance or its purpose. Regardless of Loughran's intended purpose for Dr. Gerard's testimony about Murphy's ODD diagnosis and how her symptoms manifest, such character traits cannot be proven by opinion evidence. *See* Pa.R.E. 405(a); 608(a). By failing to preclude this testimony prior to trial the trial court misapplied the law and thus abused its discretion. Therefore, we must vacate the trial court's order to the extent it denied the Commonwealth's motion in limine to preclude Dr. Gerard's testimony about Murphy's ODD diagnosis.

In sum, the portion of the trial court's order that denied the Commonwealth's motion in limine seeking to preclude Dr. Gerard from testifying about Murphy's ODD diagnosis was an appealable collateral order. In this regard, the trial court abused its discretion by not granting the Commonwealth's motion to preclude Dr. Gerard's testimony about Murphy's ODD diagnosis. We lack jurisdiction to consider any other aspects of the trial

court's order. Therefore, we vacate the trial court's order in part, quash the Commonwealth's appeal in part, and remand for further proceedings.

Order vacated in part. Appeal quashed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/26/2025